## WIXON *v.* STATE

No. 40260          December 3, 1956          90 So. 2d 859

*Prewitt & Bullard,* Vicksburg, for appellant.

*J. R. Griffin, Asst. Atty. Gen.,* Jackson, for appellee.

HALL, J.

Appellant was convicted of the crime of assault and battery with intent to kill and murder and was sentenced to the penitentiary for a term of ten years, from which he appeals.

■■ Appellant contends that the verdict of the jury is contrary to the overwhelming weight of the evidence but admits in his argument that if the weight of the evidence shows as many of the State witnesses testified, then the defendant was properly convicted.

Nine witnesses testified for the State. The shooting occurred at about 2:30 A. M. on September 17, 1954, at a night club and liquor joint called the Oasis, which is situated on the north side of Highway 80 about five and a half miles east of Vicksburg. The evidence shows that the appellant was operating another night club called the Rendezvous and that he closed for the night at about 1:00 A. M. and took all the money and put it in a money sack which he carried in his left pants pocket, and that he also carried with him a 38 caliber Smith and Wesson pistol in the right pocket of his pants. He drove to the Oasis and had been there about one and a half hours when the shooting occurred. He had had some drinks before he left the Rendezvous and had also had some drinks at the Oasis. The victim, Billy Joe McFatter, went to the Oasis with his cousin Louis McFatter and his former wife who was then Mrs. Lavonne Beard. The entrance to the Oasis leads into a bar and they passed through it to the west and entered a room where there were a number of tables, all of which were filled, and they went from this room, through a double door,

onto an adjoining patio, where they took a table and invited some other people to sit with them. They ordered drinks and while they were sitting at the table the appellant and Mrs. Margaret Beasley started dancing to the music of a juke box. After one dance they sat down and later started another dance, going from the main room out onto the patio. The great preponderance of the evidence is that someone remarked that appellant was "loaded" and the appellant replied, "Yes, I have my money on one side and my gun on the other". Billy Joe McFatter made the remark to some of those at his table "Wixon has got his money and gun". The woman with whom Wixon was dancing said that McFatter remarked "That guy is really loaded tonight", and that the appellant said, "Yes, a gun on one side and money on the other". And she testified that while they were dancing immediately following this, the appellant remarked, "That kind of made me mad when Billy Joe said that", and she testified that she said to appellant, "He was probably just kidding and didn't mean anything by it"; and at this point the appellant turned her loose and walked toward the table where McFatter was seated and she heard a shot that she thought was a firecracker but it proved to be a shot from the appellant's pistol which struck McFatter and inflicted a most serious wound upon him which required immediate surgical attention and hospitalization for a period of three months or more. Two of the eyewitnesses testified for the State that immediately before or immediately after the shooting the appellant said, "Ain't no s. o. b. going to make fun of me."

Taken as a whole the testimoney for the State shows that the appellant shot the victim deliberately and without any cause whatsoever. There was a wall about four feet high around the patio and the appellant threw the pistol over the wall and into the woods. As soon as the appellant learned that McFatter was wounded he readily admitted that he did the shooting and, when the sheriff

arrived a short time later, he told the sheriff, ''I am the man you are looking for. I shot him.'' Upon being questioned by the sheriff as to why he shot him the appellant said that he really did not know but that someone had said something about him and that he didn't like any kidding. The sheriff was unable to find the gun that night but did find it in the woods shortly after daylight at the place where appellant told the sheriff he had thrown it. The sheriff questioned numerous people who were present and none of them said that it was an accident. But at the trial the appellant testified that he first pulled his money sack out of his pocket and then started to pull the pistol out and that the pistol got caught in his pocket and fired accidentally. Several of those present testified that the appellant stopped dancing with Margaret and walked over toward McFatter's table and deliberately fired at him one time. The appellant admitted he was drinking and said that when a man takes his first drink he is drunk. He also said that he was about as drunk as any of the rest of those present. Taking the record as a whole we are satisfied that the verdict is not against the over whelming weight of the evidence but is amply supported by the evidence.

Appellant also contends that he should not have been convicted of assault and battery with intent to kill and murder, but should only have been convicted under Section 2013, Code of 1942, for pointing and aiming a gun, yet at the trial appellant vigorously denied that he either pointed or aimed the gun at McFatter. There being ample testimony to the effect that the appellant deliberately shot McFatter for no reason whatsoever, we think that he was correctly charged with and convicted of assault and battery with intent to kill and murder.

The first instruction for the State of which the appellant complains is to the effect that voluntary drunkenness is no excuse or justification for the commission of a crime and that one cannot take advantage of a situa-

tion in which he has placed himself voluntarily by being drunk or drinking, and the instruction then proceeds to advise the jury that if they believe from all the evidence in the case beyond a reasonable doubt that the defendant did then and there wilfully, unlawfully and feloniously with a pistol shoot and wound Billy Joe McFatter with the wilful, unlawful and felonious intent and of his malice aforethought to kill and murder the said Billy Joe McFatter, then it is the sworn duty of the jury to find the defendant guilty as charged in the indictment even though they may believe from the evidence in this case that the defendant was then and there drunk or drinking at the time. Appellant says that the instruction is misleading in that it assumes that a crime has been committed. We do not think so, and do not believe there is anything misleading in the instruction. Appellant also says that the instruction authorizes the jury to find the defendant guilty even if the jury believe that the defendant was drunk and argues that drunkenness is a defense to the crime charged. ▮▮▮ We think the appellant's argument is fully answered by the case of Thurmond v. State, 212 Miss. 36, 53 So. 2d 44, and the authorities therein cited.

▮▮ Appellant also complains of the granting to the State of an instruction on the question of malice aforethought, which is almost an exact copy of one which was approved in Huddleston v. State, 134 Miss. 382, 98 So. 839, and which appears in Section 3146 and Section 2492 of Alexander's Mississippi Jury Instructions. We are therefore of the opinion that the trial court committed no error in the granting of these instructions.

▮▮ The appellant lastly complains at the refusal of the following instruction: "The Court instructs the jury for the defendant that if you find from the evidence that the defendant was intoxicated at the time of the difficulty, you must be satisfied beyond a reasonable doubt that such intoxication did not incapacitate him from forming a deliberate design to kill McFatter; and if you have

any reasonable doubt on this question, you must give the defendant the benefit of such doubt, and acquit him of assault with intent to kill and murder.''

Without our so deciding, it may be that in a case where the evidence justifies it this instruction should have been given, but the appellant's own testimony shows that he was not entitled to it in the case at bar. He was asked: '' * * were you drunk on that occasion to the extent you didn't know the consequence of your acts? A. I wouldn't say that I don't remember what I done. Q. Do you remember what you did that night? A. Yes, sir. Q. You weren't drunk? A. I said before I took some drinks. Q. In other words, you don't tell the jury that you are now asking them to turn you loose because you were drunk? You don't ask them to do that? A. No, sir. Q. You are relying on the theory of an accidental shooting? A. It was an accident. I didn't mean to shoot anybody in all of my life and I never have been in trouble before.''

In the case of Denham v. State, 218 Miss. 423, 67 So. 2d 445, the defendant requested an instruction on the theory of self-defense which was refused by the court, and in upholding such refusal we said: ''Since the evidence and the logical inferences therefrom afford no basis on which to predicate self-defense instructions so far as the killing of Mrs. Denham was concerned, the refusal of those instructions did not constitute error.''

We conclude that there was no error in the refusal of the above instruction in this case and that the judgment of the lower court should be affirmed.

Affirmed.

*McGehee, C. J.*, and *Lee, Holmes* and *Arrington*, JJ., concur.