# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-01291-SCT

*ANTONIO NEAL*

*a/k/a ANTONIO L. NEAL*

*a/k/a DEANO*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/10/2000 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | AELICIA L. THOMAS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/24/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/14/2002 |

### BEFORE PITTMAN, C.J., WALLER AND CARLSON, JJ.

### WALLER, JUSTICE, FOR THE COURT:

¶1. Antonio "Deano" Neal was convicted in the Bolivar County Circuit Court of the murder of Lee Wallace Williams and of aggravated assault upon Jeff Stewart and Starr Parker. Neal was sentenced as a habitual offender to life imprisonment for murder and to 20 years imprisonment for aggravated assault, to run consecutively. On appeal, Neal raises issues on evidentiary (hearsay and photographs) and discovery (failure to supplement) rulings, failure to grant a manslaughter instruction, weight of the evidence and the classification of a witness as hostile. We affirm the convictions and sentences.

## FACTS

¶2. On October 3, 1999, at about 4:00 a.m., Jeffrey Stewart and Starr Parker were parked in a field off White Street east of United States Highway 61 in Cleveland, Mississippi. Two men pulled in and parked next to them. Stewart and Parker heard the men arguing. Stewart heard a man say, "Deano, you know I wouldn't do this to you," then, "Oh God," followed by a gun shot. A short stocky man fitting the description of Neal approached their car. Frightened, Stewart and Parker drove away while the short stocky man fired a gun at them, shattering the back window of their car.

¶3. Stewart and Parker began looking for the police and found Cleveland Police Lieutenant Reneal Little who was on patrol. Lt. Little testified that Parker was screaming and Stewart said that "somebody got shot or somebody got killed," and gave him the location of the shooting. Lt. Little found Williams's body in the location given to him by Stewart and Parker.

¶4. Other witnesses placed Neal and Williams together near the time of Williams's murder and document an ongoing dispute between the two. Joyce Jones testified that about 3:30 a.m., she saw Neal and Williams in a vehicle at a convenience store. Jones got in the vehicle. Williams began speaking to Jones and Neal told him to shut up and hit him on the shoulder or bumped his head. She told Neal to get out of Williams's car. Neal replied that he would not because Williams owed him too much money. Jones then got out of the car. Neal got out of the vehicle to go to the bathroom and Jones testified that he almost dropped a gun that was in his right front pocket. A short time later she saw Neal driving alone. Michael Diggs also testified that earlier that morning, he had seen Williams, Neal, and Fred Miller in a heated argument about money at a nightclub and saw the three men leave together in a car. Ira Williams, L.W. Williams's brother, also testified that he saw Williams and Neal riding around earlier that morning.

¶5. Dr. Stephen Hayne performed an autopsy on Williams's body. He found abrasions on the decedent's head and testified that the cause of death was a gunshot wound through the neck.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S OBJECTION TO HEARSAY TESTIMONY.

¶6. Neal argues that the trial court erred in overruling his objection to a hearsay statement. Lt. Little testified that, while he was on patrol, a car pulled up beside him. A young lady inside the car was screaming and a young male yelled, "Hey somebody got shot or somebody got killed." The statement was offered to show the basis for Lt. Little's subsequent actions in his investigation, and not offered to prove the truth of the matter. *See* M.R.E. 801(c). No error is committed where the trial court overrules a hearsay objection when the statement is not used to prove the truth of the matter asserted. *Martin v. State*, 609 So. 2d 435, 439 (Miss. 1992). The statement is also admissible under M.R.E. 803(1) as a present sense impression or M.R.E. 803(2) as an excited utterance. *See Clark v. State*, 693 So. 2d 927, 932 (Miss. 1997); *Knight v. State*, 601 So. 2d 403, 406 (Miss. 1992).

¶7. This assignment of error is without merit.

### II. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE CERTAIN PHOTOGRAPHS OF THE VICTIM.

¶8. Neal argues that the photographs of the deceased admitted into evidence were not relevant and only served to inflame jury. One photograph (Exhibit SA-1) depicted the location of the body when found by Lt. Little. Another photograph (Exhibit SB-1) showed the wound and identified the deceased after the emergency technicians moved the body for examination purposes.

¶9. We have held that, when photographs depict the circumstances of death, location of body and manner of death, deference must be given to the trial judge's exercise of discretion on the admissibility of photographs of victims in murder cases:

Photographs have evidentiary value where they: (1) aid in describing the circumstances of the killing and the corpus delicti; Williams v. State, 354 So. 2d 266 (Miss. 1978); (2) where they describe the location of the body and cause of death; Ashley v. State, 423 So. 2d 1311 (Miss. 1982); and (3) where they supplement or clarify witness testimony. Hughes v. State, 401 So. 2d 1100 (Miss. 1981).

This Court has determined that the admissibility of photographs rests within the sound discretion of the trial judge. Griffin v. State, 557 So. 2d 542 (Miss. 1990); see also Mackbee v. State, 575 So. 2d 16, 31 (Miss. 1990); Boyd v. State, 523 So. 2d 1037, 1039 (Miss. 1988); Smith v. State, 419 So. 2d 563, 567 (Miss. 1982), cert. denied 460 U.S. 1047, 103 S. Ct. 1449, 75 L. Ed. 2d 803 (1983). Furthermore, the decision of such trial judge will not be disturbed absent a showing of an abuse of discretion. Herring v. State, 374 So. 2d 784, 789 (Miss. 1979); see also Cabello v. State, 471 So. 2d 332, 341 (Miss. 1985), cert. denied 476 U.S. 1164, 106 S. Ct. 2291, 90 L. Ed. 2d 732 (1986). Such "discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." Hart v. State, 637 So. 2d 1329, 1335 (Miss. 1994) (quoting Williams v. State, 544 So. 2d 782, 785 (Miss. 1987)).

*Westbrook v. State*, 658 So. 2d 847, 849 (Miss. 1995).

¶10. There is nothing gory or inflammatory about the pictures. These photographs were admissible to show the location of the victim's body, indicating the circumstances of the killing, and the cause of death of the deceased. *See Westbrook*, 658 So. 2d at 849. There was no abuse of discretion committed by the trial court in allowing the photographs into evidence.

### III. WHETHER THE TRIAL COURT ERRED IN ITS DETERMINATION NO DISCOVERY VIOLATION OCCURRED WHEN THE STATE FAILED TO MAKE A SUPPLEMENTAL DISCLOSURE OF NEW STATEMENTS MADE BY THE STATE'S WITNESSES.

### IV. WHETHER THE TRIAL COURT ERRED IN DENYING NEAL'S MOTION FOR A MISTRIAL BASED ON THE DISCOVERY VIOLATION.

¶11. Neal argues that Stewart's testimony stating that he remembered hearing the name "Deano" when he overheard the conversations coming from the vehicle pulled up beside him violated URCCC 9.04 I, because the prosecution did not notify the defense of its intent to use this evidence until ten days prior to trial. Neal argues that he was unable to prepare a defense for such testimony and that the tardy supplement to discovery constituted prosecutorial misconduct. The State responds that it supplemented its discovery responses as soon as it found out about the testimony and, nonetheless, that the objection is procedurally barred as being untimely.

¶12. URCCC 9.04 I outlines several options for the trial court to compensate the offended party for untimely disclosure of discovery, including allowing time for examination of the evidence, granting a continuance, or even declaring a mistrial. However, under the circumstances of this case, Neal had sufficient notice and was not prejudiced in any way.

¶13. This assignment of error is without merit.

### V. WHETHER THE TRIAL COURT ERRED IN GIVING STATE'S JURY

**INSTRUCTION S-3.**

¶14. Neal argues that Jury Instruction S-3, dealing with the amount time necessary to form deliberate design prior to committing murder, is erroneous based on similarities to an instruction given in *Windham v. State,* 520 So. 2d 123 (Miss. 1987). Neal believes the instruction is flawed because the requirement to form intent prior to the act of violence was effectively eliminated by the phrase "if any." Instruction S-3, as given by the trial court, is as follows:

> The Court instructs the jury that the deliberate design as mentioned in these instructions does not have to exist in the mind of the slayer for any given length of time; and if only moments before the act of violence, *if any*, the defendant, ANTONIO NEAL A/K/A "DEANO", acted with the deliberate design to take life of Lee Wallace Williams, then it was as truly malice and the act was as truly murder as if the deliberate design had existed in the mind of the defendant for minutes, hours, days, weeks or even years.

(emphasis added).

¶15. Problems occur when the jury is given the option of murder, requiring deliberate design, or the lesser offense of manslaughter, which does not. In *Windham v. State*, 520 So. 2d 123, 125-26 (Miss. 1987), we held the trial court committed error by instructing the jury that deliberate design may be formed at the very moment of the fatal shot where the jury was also given the option of finding manslaughter if it found the killing to have occurred without malice in the heat of passion. *Id.*

¶16. An unjustified and unexcused taking of life is presumed to be murder unless there is evidence upon which a jury can rationally justify mitigation down to manslaughter. An example of mitigation occurs where there is a killing committed in a heat of passion arising out of a legally sufficient provocation. *Nicolaou v. State*, 534 So. 2d 168, 171-72 (Miss. 1988).

¶17. In Neal's case an instruction for manslaughter was not offered. Moreover, the facts do not justify the giving of a manslaughter instruction. Absent a manslaughter issue, any error in the instruction is harmless.

¶18. This assignment of error is without merit.

### VI. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE. WHETHER THE STATE FAILED TO MAKE A PRIMA FACIE SHOWING OF NEAL'S GUILT.

¶19. Neal argues that the State did not put on any direct eyewitness evidence and that the circumstantial evidence presented was insufficient for a reasonable jury to have convicted him. We recently set out the standard of review for challenges to sufficiency of evidence as follows:

> [W]e must, with respect to each element of the offense, consider all of the evidence--not just the evidence which supports the case for prosecution--in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not

guilty.

*Gleeton v. State*, 716 So. 2d 1083, 1087 (Miss. 1998).

¶20. To sustain a conviction on circumstantial evidence, every other reasonable hypothesis of innocence must be excluded:

> This Court has repeatedly held that "[D]irect evidence is unnecessary to support a conviction so long as sufficient circumstantial evidence exists to establish guilt beyond a reasonable doubt." Underwood v. State, 708 So. 2d 18, 35 (Miss. 1998) (quoting Conner v. State, 632 So. 2d 1239, 1252 (Miss. 1993), overruled on other grounds, Weatherspoon v. State, 732 So. 2d 158 (Miss. 1999)). Campbell cites McRee v. State, 732 So. 2d 246, 250 (Miss. 1999), for the proposition that in a circumstantial evidence case, guilt must be shown "to the exclusion of every reasonable hypothesis consistent with innocence."
>
> Circumstantial evidence need not exclude every "possible doubt," but only every other "reasonable" hypothesis of innocence. Tolbert v. State, 407 So. 2d 815, 820 (Miss. 1981). Each case must be determined from the circumstances shown in the testimony and the facts must consistently point to but one conclusion--guilt. Hilliard v. State, 749 So. 2d 1015 (Miss. 1999); Hester v. State, 463 So. 2d 1087, 1091 (Miss. 1985) (quoting Sanders v. State, 286 So. 2d 825, 828 (Miss. 1973)).

*Campbell v. State*, 798 So. 2d 524, 528-29 (Miss. 2001).

¶21. Neal is correct that the State's evidence was circumstantial -- there was no witness who testified that he saw Neal shoot Williams. The evidence shows that Stewart and Parker saw a vehicle pull up next to them and heard two men arguing. Stewart heard the distinct name "Deano" prior to a shot being fired. Following the gun shot Stewart and Parker saw a short stocky man fitting the description of Neal approach their car and fire at them when they pulled away.

¶22. There were other telling events in the hours before the murder. Joyce Jones testified that Neal and Williams were sitting in a car at a convenience store that morning. When Neal was getting out of the vehicle to go to the bathroom, she saw him almost drop a gun. Jones left them because they were arguing about some money being owed and she saw Neal strike Williams. She later saw Neal driving alone. Michael Diggs saw Williams, Neal, and Fred Miller in a heated argument at a club earlier that morning. Ira Williams saw L.W. Williams and Neal riding around that morning. Officer Little found Williams's body in the location that Stewart and Parker had described. A plethora of evidence existed on which a jury could have reasonably relied to find, beyond a reasonable doubt, that no reasonable inferences of innocence existed and that Neal killed Williams.

¶23. This issue is without merit.

### VII. WHETHER THE TRIAL COURT ERRED IN CLASSIFYING ELLA TOWNES AS A HOSTILE WITNESS.

¶24. Neal argues that the trial court incorrectly classified Ella Townes as a hostile witness, and that the State was improperly allowed to ask her leading questions. Actually, the State sought to interrogate Townes as a witness identified with an adverse party under M.R.E. 611(c). After the State established a foundation that Neal and Townes's daughter lived together for 3 or 4 years, the trial court found Townes "connected with

the defendant" and allowed the witness to be treated as a hostile witness. Testimony revealed Townes was interested in the events following Williams's murder, that she had conversations with her daughter and with Neal concerning the murder, and that she harbored suspicions about Neal's involvement in the murder. All of this evidence is indicative of a family-type relationship.

¶25. M.R.E. 611(c) allows leading questions on direct examination when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party:

> (c) Leading Questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony.

> Ordinarily, leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

¶26. We have ruled that the trial court, in deciding whether a witness is identified with an adverse party for purposes of allowing leading questions, should "determine from the facts and circumstances of the case whether the witness proposed to be called is one who is identified with the adverse party within the meaning and contemplation of the rule." *Harris v. Buxton T.V., Inc.*, 460 So. 2d 828, 833 (Miss. 1984) (discussing M.R.C.P. 43(b)(3), the predecessor rule to M.R.E. 611(c)); *see also* *Hall v. State*, 546 So. 2d 673, 675 (Miss. 1989) (M.R.E. 611(c) should be more broadly interpreted than M.R.C.P. 43(b)(3)).

¶27. The decision to allow leading questions rests within the discretion of the trial court and will not be disturbed unless there is a showing of abuse of discretion. *McFarland v. State*, 707 So. 2d 166, 175 (Miss. 1998). We cannot say based under the facts and circumstances of this case that the trial court abused its discretion in identifying Townes with Neal and allowing leading questions.

¶28. This assignment of error is without merit.

## CONCLUSION

¶29. For these reasons, the judgment of the Bolivar County Circuit Court is affirmed.

¶30. **COUNT I: CONVICTION OF MURDER AS A HABITUAL OFFENDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SAID SENTENCES SHALL RUN CONSECUTIVELY AND CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.**

> **PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**