863 So.2d 1047 (2004)
Harland Craig RENFROW, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00602-COA.
Court of Appeals of Mississippi.
January 20, 2004.
*1049 Glen W. Hall, Jackson, James A. Williams, Meridian, Percy Stanfield, Jackson, attorneys for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before KING, P.J., IRVING and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Harland C. Renfrow was convicted in the Circuit Court of Lauderdale County of sexual battery of a three year old female child and was sentenced to serve life in the custody of the Mississippi Department of Corrections. Renfrow appeals asserting that (1) the trial court erred in allowing the child to testify, (2) the indictment was flawed, (3) the trial court erred in allowing an instruction which referred to the child as a victim, and (4) his counsel rendered ineffective assistance. We find no error and affirm.

FACTS
¶ 2. On June 11, 2000, Tracy Hill-Watts, an investigator for the Lauderdale County Sheriff's Department, was called to Riley's Hospital on a report of an alleged sexual assault on a child. The child was a three year old female, who was brought into the hospital that morning by Renfrow.
¶ 3. After an examination, Dr. James Purdy, an obstetrician and gynecologist, determined that the child had extensive damage to her vagina, pelvic peritoneum, and rectum. The child was transported to the University Medical Center in Jackson where she underwent several surgeries, including a sigmoid loop colostomy, to repair the damage.
¶ 4. Renfrow was indicted and charged with sexual battery. The indictment, in pertinent part, provided:
Harland Craig Renfrow ... on or about the 10th day of June. A.D.2000, did then and there willfully, unlawfully, and feloniously engage in sexual penetration with a foreign object, as defined in MCA 97-3-97, with [the child] ..., a female child under the age of fourteen(14) years, and the said Harland C. Renfrow... is a person twenty-four or more months older than the said child, in violation of Section 97-3-95(d), Mississippi Code....
¶ 5. At trial, the child took the stand, at age five, and testified that Renfrow hurt her. The defense moved to strike the child's testimony, and the motion was granted. After continued questioning, the trial judge ruled that the child was not competent to testify. The judge found that the child was not yet capable of accurately recalling past events, and he instructed the jury to disregard the testimony of the child. Each juror indicated that they would follow the judge's instructions. The judge denied the defense motion for a mistrial.
¶ 6. Investigator Tracy Hill-Watts testified that she accompanied investigator Brenda Snowden, a Wesley House Community Center social worker, and Vicki Whitlock, a Department of Human Services social worker, to the home of the child and her mother after she had been released from the hospital. Hill-Watts testified that the child responded to questions about who hurt her by answering, "[Renfrow] hurt me."
¶ 7. Hill-Watts further testified that Renfrow had claimed that the child's injuries resulted from a fall onto a toy baby doll's bottle. A toy bottle that Hill-Watts retrieved from the hospital's medical personnel was admitted into evidence. Hill-Watts testified that during her investigation she discovered that the child, in the presence of Renfrow, nodded to the nurse *1050 at the hospital when asked whether she fell onto a bottle.
¶ 8. The prosecution introduced a sex toy, described as a dildo or a vibrator, into evidence. Judy Womack, Renfrow's former wife, identified the sex toy as her property. She testified that she took this sex toy to Renfrow's home on May 28. After June 11th, Womack got permission from the authorities to retrieve the sex toy from Renfrow's home. Since that time, she testified that she retained custody of it.
¶ 9. Dr. Purdy testified that the injuries he observed were not consistent with the baby bottle or self auto insertion. Dr. Purdy testified that the toy baby doll bottle explanation was inaccurate and not plausible. According to Dr. Purdy, the child's injuries were consistent with the insertion of a vibrator, similar to the sex toy that was entered into evidence. Dr. Purdy further testified that the injury was not recent to his examination. Instead, Dr. Purdy determined that the injury occurred several hours before the child was brought to the hospital.
¶ 10. The child's mother testified that she had sexual relations with Renfrow on June 10, 2000. She testified that Renfrow attempted to use a vibrator on her. She identified the sex toy/vibrator introduced in evidence as the vibrator Renfrow attempted to use on her. She testified that this sexual encounter with Renfrow occurred the night before the child was brought into the hospital for her injuries.
¶ 11. Brenda Snowden testified that she accompanied investigator Hill-Watts and Vicki Whitlock to the child's home after she had been released from the hospital. Snowden testified that when investigator Hill-Watts asked the child to tell who hurt her, the child said, "[Renfrow] hurt me." She testified that Ms. Whitlock also asked the child to tell us again who hurt you. And the child again said, "[Renfrow] hurt me." The child's mother also testified that the child's response was that Renfrow had hurt her.
¶ 12. Jerri Clay, a registered nurse at Riley's Hospital, testified that she was on duty when the child arrived. Clay testified that when she asked the child what happened, Renfrow interrupted and told her that the child fell on the bottle. Clay testified that the child nodded, affirming Renfrow's explanation. Clay further testified that she called the Rape Crisis Center and the sheriff's department because she believed that this injury was the result of a sexual offense.
¶ 13. Renfrow testified that the child and his minor daughter stayed with him at his trailer on the weekend in question. Renfrow testified that he heard the child screaming and that he went to her room. He testified that the child told him that she had fallen on the toy bottle. He testified that he took her diaper off, sat her on the bed, and examined her. He testified that he saw the bottle and then took the bottle out of her. Renfrow testified that he then took the child to the bathroom, washed her, wrapped her in a towel, and brought her to the hospital.
¶ 14. Renfrow testified that there was a hole in the diaper the child was wearing. After he took it off, Renfrow claimed he placed the diaper on a barrel in the back of his house where he puts his trash. After being questioned as to the whereabouts of the diaper, Renfrow testified that he did not know where the diaper was and speculated that some dogs probably took it away. Hill-Watts testified that the diaper was not recovered.
¶ 15. Renfrow admitted that the vibrator introduced into evidence was in his home the night of the incident. However, he claimed that he did not attempt to use *1051 the vibrator during sex with the child's mother.
¶ 16. Renfrow further testified that only he, his minor daughter, and the child's mother had access to the child on the night in question. Renfrow admitted that the child's mother, however, did not see the child that night. When he returned from the hospital, Renfrow testified that he took the sheets off the bed and "stuck them in the washing machine and put some water on them," but never washed them. Renfrow testified that since he had only two pair of sheets, he put them in the washer because of the blood stains. Hill-Watts testified that the bloody sheets were not recovered.
¶ 17. The jury found Renfrow guilty. The trial court denied Renfrow's motion for judgment notwithstanding the verdict or, in the alternative, a new trial.

LEGAL ANALYSIS
I. Whether Renfrow was denied a fair trial and due process when the child was allowed to testify before a ruling on the competency of the child, when there was no cross-examination of the child, and when statements from the child to others that defendant injured her were disclosed to the jury.
¶ 18. On appeal, Renfrow argues that he was denied a fair trial because the child was allowed to take the witness stand without first having been qualified as a competent witness.
¶ 19. The child, at age five, took the stand to testify. The prosecutor asked, "who hurt you on June 10th 2000?" The child responded, "[Renfrow]." Defense counsel then objected on the basis that the question was leading. The objection was sustained.
¶ 20. The child then testified that she did not recall going to the hospital or talking to a doctor or a nurse. She testified that she did not know when she was hurt or how old she was when she got hurt. In response to further questioning, the child again testified that Renfrow hurt her. The defense again objected. The court sustained the objection and struck the testimony.
¶ 21. The child then testified that she did not know where she got hurt. She did not remember being in pain. And, for the third time, she testified that Renfrow hurt her in response to the prosecutor's question, "[E]arlier when you said you got hurt, you said you knew who hurt you?" The court again sustained the defense's objection.
¶ 22. At this point, the defense moved to strike and for a mistrial. The court granted the motion to strike, based on Rules 601 and 603 of the Mississippi Rules of Evidence, but denied the mistrial. The court then stated, "it is with due regret, counsel, but I can't rule this witness to be competent to testify." Defense counsel then requested the court to instruct the jury as to the motion to strike, and the judge instructed the jury to disregard the comments of the child. Each juror then indicated that they would follow the judge's instructions. Renfrow claims that the trial judge committed error in this ruling.
¶ 23. Prior to the trial, the defense chose not to challenge the child's competency to testify. The prosecutor, during pretrial motions, announced that they intended to call the child as a witness. The testimony they intended to use had been provided in discovery. Renfrow did not file a motion in limine to prevent this testimony and did not request that the trial judge hold a competence hearing, outside *1052 the presence of the jury, prior to the child taking the stand.
¶ 24. The determination of the competency of a witness is made at the discretion of the trial judge. Burbank v. State, 800 So.2d 540, 544(¶ 6) (Miss.Ct.App. 2001). Every person is assumed competent to testify. Barnett v. State, 757 So.2d 323, 328(¶ 13)(Miss.Ct.App.2000). "Although the court did not conduct a preliminary investigation of the child to determine competency, it was not required to do so." Burbank, 800 So.2d at 544(¶ 6). Therefore, we find Renfrow's argument that he was denied a fair trial because the child was allowed to take the stand without first having been qualified as a competent witness to be without merit. Further, Renfrow has not demonstrated that the trial judge abused his discretion. Without a demonstration of an abuse of that discretion, there is no basis for this Court to overturn that ruling. Id.
¶ 25. Renfrow next argues that he was denied his constitutional right to confront the child. The trial judge found that the defense had the opportunity to cross-examine the witness while she was on the stand, despite the fact that the judge later found that the child's testimony could not be relied upon. The defense objected to the child's testimony, and the child's testimony was determined to be incompetent in response to the defense's objection. The defense was not prohibited from questioning the witness; the opportunity was there. The witness simply was unable to offer competent testimony.
¶ 26. The trial judge instructed the jury to disregard the child's testimony, and the jurors confirmed that they would by a showing of their hands. There is a strong presumption that the jury follows the instructions of the court. McGilberry v. State, 741 So.2d 894, 913(¶ 63) (Miss.1999). Renfrow has failed to rebut this presumption. Therefore, we find that Renfrow has not established a constitutional violation or an abuse of discretion by the trial judge. Consequently, we find no error.
¶ 27. Renfrow next argues that it was error to admit the child's hearsay statements concerning the cause of the injuries. The State called Tracy Hill-Watts to testify as to what the child had said concerning the investigation of the alleged sex offense. Hill-Watts testified that the child was three and a half years old at the time of her statement. Hill-Watts testified that she visited the child in the hospital soon after the alleged sex offense occurred. She testified that at the time of her visit two social workers, Brenda Snowden and Vicki Whitlock, were present along with the child's mother. Hill-Watts testified that the child told Whitlock that Renfrow had hurt her. She further testified that the child said it again so that everyone present could hear her.
¶ 28. Renfrow objected to Hill-Watt's testimony concerning the child's statements on the basis that it was hearsay. The trial judge has discretion to either accept or reject evidence offered. Austin v. State, 784 So.2d 186, 193 (¶ 23) (Miss. 2001). "That discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will only be had when an abuse of discretion results in prejudice to the accused." Id. at 193-94 (¶ 23). Here, the trial judge found the testimony admissible under Rule 803(25) of the Mississippi Rules of Evidence, as an exception to the hearsay rule. Rule 803(25) provides:
A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the *1053 time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
The comment to Rule 803 lists several factors, sometimes referred to as the "Wright factors," that a trial judge should consider to determine whether there is a "substantial indicia of reliability." The factors include:
(1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.
M.R.E. 803(25) cmt. The comment also requires that "[a] finding that there is a substantial indicia of reliability should be made on the record." Id.
¶ 29. The trial judge conducted the required hearing, outside the presence of the jury. The trial judge accepted testimony and made extensive findings as to the factors necessary to ascertain the veracity of the declarant's testimony. The judge found that there was no motive to lie, that Hill-Watts's character was not disputed, that the statements were spontaneous and not coerced, and that Hill-Watts's testimony was credible.
¶ 30. The trial judge followed the proper procedure required by Rule 803(25) of the Mississippi Rules of Evidence. Therefore, the trial judge did not abuse his discretion in allowing this testimony. We find this assignment of error to be without merit.
II. Whether the defendant was denied a fair trial and due process of law when he was indicted on a charge of sexual penetration of a three-year-old with a foreign object not specifically named in the indictment and a vibrator in the form of a penis is introduced where there was no medical certainty that the vibrator caused the injuries to the child?
¶ 31. Renfrow next argues that the indictment was flawed because it named the instrument used to injure the child as a "foreign object." Uniform Circuit and County Circuit Court Rule 7.06 requires that the indictment provide "a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." Rule 7.06 commands that an indictment include:
1. The name of the accused;
2. The date on which the indictment was filed in each court;
3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
4. The county and judicial district in which the indictment is brought;
5. The date and, if applicable, the time, on which the offense was alleged to be committed. Failure to state the correct date shall not render the indictment insufficient;
*1054 6. The signature of the foreman of the grand jury issuing it; and
7. The words "against the peace and dignity of the state."
¶ 32. If an indictment includes the seven items enumerated, it is sufficient to provide the defendant with notice of the charge against him. Roberson v. State, 595 So.2d 1310, 1318 (Miss.1992). We find that all seven requirements of Rule 7.06 were met by the indictment, and it "reasonably provide[d] the accused with actual notice" of the charge against him. Roberson, 595 So.2d at 1318.
¶ 33. We also find that the use of the term "foreign object" gave Renfrow sufficient notice that an object used in the crime would be introduced into evidence. The term "foreign object" was broad enough to include the sex toy or vibrator, regardless of how it was described, as well as the baby bottle, which was Renfrow's theory about how the child was injured. We find no error in the indictment.
¶ 34. Renfrow also argues that the trial court erred in admitting the vibrator into evidence. He contends that, although the vibrator may have met the relevancy requirement set forth in Mississippi Rule of Evidence 401, its prejudicial effect outweighed its probative value as set forth in Mississippi Rule of Evidence 403. Therefore, Renfrow asserts that the vibrator should have been excluded.
¶ 35. The admissibility and relevancy of evidence are within the discretion of the trial court. Absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. McCoy v. State, 820 So.2d 25, 31 (¶ 15) (Miss.Ct.App.2002). Here, Dr. Purdy testified that the vibrator introduced at trial was consistent with the child's injuries. Dr. Purdy testified that the toy baby bottle was not consistent with the injuries, as claimed by the defendant. The child's mother, testified that Renfrow had attempted to use the vibrator on her during sex the night before. She identified the vibrator presented in court as the vibrator that she saw the defendant with on the night of June 10, 2000. The trial judge admitted both the vibrator and the baby bottle. The trial judge allowed testimony on both so that the jury could weigh the credibility of the witnesses and draw reasonable inferences from the evidence.
¶ 36. The vibrator was certainly probative evidence. Based on this testimony, we cannot say the trial judge erred in his determination that the prejudicial effect of admitting the vibrator into evidence did not outweigh its probative value. Therefore, we find no abuse of discretion in admitting the vibrator into evidence.
III. Whether the defendant was denied a fair trial and due process of law when the jury instructions taken as a whole contained assumptions of fact of material issues.
¶ 37. Renfrow argues that it was error for the State's instruction on the elements of the crime to refer to the child as the victim. Instruction S1-A, in pertinent part, read "and the Defendant is more than twenty four (24) months older than the victim." Renfrow contends that the use of the word "victim" improperly influenced the jury's finding that Renfrow was guilty of sexual battery of the child.
¶ 38. Upon review of the record, we find that Renfrow did not object to this language in the State's amended instruction S-1A. It is well established that the appellant must object with specificity in order to preserve an error for appeal. Oates v. State, 421 So.2d 1025, 1030 (Miss. 1982). This assignment of error is procedurally barred.
*1055 IV. Whether the defendant was denied effective assistance of counsel.
¶ 39. Renfrow asserts three grounds upon which he claims his counsel was ineffective. Renfrow argues that his counsel was ineffective when his counsel (1) stated during voir dire that the defendant could be released on a technicality even though the proof showed him guilty, (2) failed to eliminate the term "victim" from an instruction, and (3) failed to object to the trial judge's assistance to the prosecution in Dr. Purdy's testimony concerning the photographs that were introduced into evidence.
¶ 40. According to Strickland v. Washington, 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to prove trial counsel to be ineffective, it must be shown that (1) counsel's performance was deficient, and (2) the defendant was prejudiced by his counsel's mistakes. There is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. Id. To overcome this presumption, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." Id.
¶ 41. We consider Renfrow's arguments in order. As to the first ground, whether his counsel was ineffective when he stated during voir dire that the defendant could be released on a technicality even though the proof showed him guilty, Renfrow has failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. In Mohr v. State, the Mississippi Supreme Court required the defendant to show the existence of a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Mohr v. State, 584 So.2d 426, 430 (Miss.1991). Renfrow has failed to show any probability that the outcome would have been different but for his counsel's comments during voir dire. Renfrow simply relies on conclusory statements. There is no evidence that counsel's actions were anything other than trial strategy. Accordingly, we find this argument to be without merit.
¶ 42. As to the second ground, whether his counsel was ineffective when he failed to eliminate the term "victim" from an instruction, the jury was free to determine that the child was the victim of a crime and that the injuries she sustained were not accidental. Even if counsel had objected, Renfrow has again failed to demonstrate that the outcome would probably have been different. We find no merit to this argument.
¶ 43. As to the third ground, whether his counsel was ineffective when he failed to object to the trial judge's assistance to the prosecution in Dr. Purdy's testimony concerning the photographs that were introduced into evidence, during Dr. Purdy's testimony, the State offered photographs of an external view of the child's perineum and vulva taken on the night of the incident. Renfrow's counsel objected arguing that the prejudicial effect outweighed the probative value. The trial court viewed the Polaroid pictures and then asked the prosecution to question Dr. Purdy as to how the photographs depicted the child's injuries. The State asked Dr. Purdy if the pictures showed the injuries that the child sustained. Dr. Purdy responded that the pictures were representative of what he saw that day. Dr. Purdy testified that the pictures showed the area of the injury, but did not show the intensity of the cut because of the poor illumination.
¶ 44. The trial judge sustained the objection as to all of the photographs except one. The judge found that the pictures *1056 had significant probative value and a high degree of prejudicial effect, but because there was an issue in regarding how the child was injured, the trial judge allowed only one of the three photographs to be admitted. The trial judge reasoned that the admitted photograph accurately represented what Dr. Purdy saw upon examining the child.
¶ 45. The trial court is vested with broad discretion in determining the admissibility of evidence. Johnson v. State, 655 So.2d 37, 42 (Miss.1995). A trial judge has the responsibility, within judicial discretion, of confining the testimony during trial to the issue before it. Hannah v. State, 336 So.2d 1317, 1320-21 (Miss.1976). In this case, the photograph in issue was relevant to the child's injuries. We find no abuse of discretion by the trial court in admitting the photograph or prejudice to Renfrow from the court's request that the prosecution question Dr. Purdy as to how the photographs depicted the child's injuries.
¶ 46. In addition, Renfrow cites no authority to support a finding that the trial judge was in error. It is Renfrow's duty to provide authority and support for the issues which he presents. Rigby v. State, 826 So.2d 694, 707(¶ 44) (Miss.2002) (citing Hoops v. State, 681 So.2d 521, 526 (Miss.1996)). By failing to demonstrate how the court was in error, Renfrow has again failed to demonstrate that but for his counsel's alleged deficiency the outcome would have been different. Therefore, we find this assignment of error to be without merit.
¶ 47. We find no error and affirm.
¶ 48. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.