PROCEDURAL HISTORY AND FACTS ¶ 1. Deidren Ross ("Deidre")[1] died of a gunshot wound to the head on May 21, 2000. At the time of her death, Deidre was at her home with her husband, John Ross, and their three children. After determining that Deidre's death was a homicide, Ross was arrested and indicted for her murder.
 ¶ 2. On May 4, 2002, a jury in the Circuit Court of Sunflower County found Ross guilty of the murder of his wife, Deidre. The trial court sentenced Ross to a term of life in prison to be served in the custody of the Mississippi Department of Corrections. After his post-trial motions were denied, Ross filed an appeal with this Court asserting the following issues: (1) the trial court erred in admitting Dr. Steven Hayne's testimony concerning the autopsy, bruises, trajectory of the bullet, and the cause and manner of death; (2) the trial court erred in denying his motion to exhume Deidre's body for examination; (3) the trial court erred in admitting evidence concerning the scene of death in light of circumstances suggesting tampering with the evidence; (4) the trial court erred in admitting evidence of prior injuries to Deidre; (5) the trial court erred in allowing allegations of his jealous nature into evidence; and (6) the State failed to meet its burden of proof.
 STANDARD OF REVIEW ¶ 3. Whether evidence is admissible is within the discretion of the trial judge. Davis v. State, 684 So.2d 643, 661 (Miss. 1996); Johnston v. State, 567 So.2d 237, 238 (Miss. 1990). The trial judge's decision will not be overturned on appeal unless it was an abuse of discretion. Davis, 684 So.2d at 661;Johnston, 567 So.2d at 238. This Court will not reverse the trial court's decision merely because of an erroneous evidentiary ruling. Newsom v. State, 629 So.2d 611, 614 (Miss. 1993). The appellant must show that he was effectively denied a substantial right by the ruling before a reversal can be possible. Petersonv. State, 671 So.2d 647, 656 (Miss. 1996); Newsom,629 So.2d at 614. If a constitutional right has been violated, the case must be reversed unless this Court finds that the "error was harmless beyond a reasonable doubt" upon consideration of the entire record. Newsom, 629 So.2d at 614.
 DISCUSSION OF ISSUES I. DID THE TRIAL COURT ERR IN ADMITTING DR. HAYNE'S TESTIMONY CONCERNING THE AUTOPSY, BRUISES, TRAJECTORY OF THE BULLET, AND THE CAUSE AND MANNER OF DEATH?
 ¶ 4. In his first issue, Ross claims that the trial court erred in admitting Dr. Hayne's testimony concerning the autopsy, bruises, trajectory of the bullet, and the cause and manner of Deidre's death. Specifically, Ross argues that the manner in which Dr. Hayne conducted the autopsy and documented the evidence was not consistent with accepted guidelines for proper handling and preservation of the evidence. The analysis for admission of expert testimony is enumerated in Mississippi Rules of Evidence 702. Although Rule 702 was amended on May 29, 2003, at the time of Ross's trial, Rule 702 read as follows:
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified *Page 1184 
as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Furthermore, at the time of the trial, Mississippi law also recognized the Frye test, noting that Rule 702 did not "relax the requirement that the scientific principle from which the expert's opinion is derived `must be sufficiently established to have gained general acceptance in the particular field to which it belongs.'" M.R.E. 702 cmt. (repealed 2003) (quoting Frye v.United States, 293 F. 1013, 1014 (C.A.D.C. 1923)). According to Mississippi Rule of Evidence 703, the expert may base his opinion on personal observation as well as facts or data "made known to him at or before the hearing." All evidence must also pass the requirements of Mississippi Rule of Evidence 403, which excludes evidence if it is unfairly prejudicial, confusing, or a waste of time.
 ¶ 5. The supreme court, in another case in which Dr. Hayne was an expert witness, stated that forensic pathology is generally accepted as a division within pathology and a forensic pathologist "addresses two basic questions: what was the cause of death, and what was the manner of death?" Bell v. State,725 So.2d 836 (¶ 51) (Miss. 1998). The court in Bell also recognized that Rule 702 allows a forensic pathologist to "opine as to the path of the lethal gunshot wound." Id.
 ¶ 6. At the trial, Dr. Hayne was qualified as an expert in forensic pathology. Dr. Hayne testified that he has done over 20,000 autopsies in his career and been qualified as an expert around 1,700 times just in Mississippi. Ross made no objections to qualifying Dr. Hayne as an expert in the field of forensic pathology.
 ¶ 7. Dr. Hayne performed the autopsy on Deidre. He took photographs and measurements, made diagrams of the body and the gunshot wound, and noted various bruising on Deidre's body. Dr. Hayne testified that some of Deidre's bruises were consistent with defensive posturing and that these bruises occurred within six hours of her death. Dr. Hayne noted the `tattooing' around the gunshot wound, which he said indicated that the muzzle was within inches of the gunshot wound. Dr. Hayne followed the tract of the bullet and, after noting the site of the wound, the distance, the trajectory of the bullet, and the position of Deidre's body, determined that in his opinion it was not possible that Deidre fired the shot herself. Ross does argue that because Dr. Hayne did not follow the generally accepted procedures for autopsies as articulated in Spitz and Fisher's MedicolegalInvestigation of Death: Guidelines for the Application ofPathology to Criminal Investigation (3rd ed. 1993) his autopsy, collection of evidence, and testimony should not have been admitted. However, Dr. Hayne testified that although he refers toSpitz, he uses other treatises more commonly.
 ¶ 8. Much of Ross's argument consists of contrasting the testimony of Dr. Hayne with the testimony of Dr. James Bryant, a forensic pathologist testifying as Ross's expert witness. However, it is the jury's duty to determine which witness' testimony is given the greater weight. Kolberg v. State,829 So.2d 29 (¶ 116) (Miss. 2002). Here, the jury gave the greater weight to Dr. Hayne.
 ¶ 9. Ross also argues that the quality of the photographs used by Dr. Hayne was insufficient to afford an unobstructed view of the injuries on the body. The quality of the photographs was discussed during a motion in limine hearing and the trial court determined that the autopsy photos would be admitted as their value goes to the weight of the evidence and not *Page 1185 
to their admissibility. Dr. Hayne took the photos during his autopsy, thus the trial court found them to be relevant and admissible. We cannot find that the trial court erred in allowing the autopsy photos into evidence.
 ¶ 10. We cannot find that the trial court erred in allowing Dr. Hayne to testify as to the autopsy which he performed and to opine as to the cause and manner of Deidre's death.
 II. DID THE TRIAL COURT ERR IN DENYING ROSS'S MOTION TO EXHUME DEIDRE'S BODY FOR EXAMINATION?
 ¶ 11. In his next issue, Ross argues that the trial court erred in denying his motion to exhume Deidre's body in order for the body to be examined by an independent expert of his own choosing. According to Mississippi Code Annotated Section 41-61-67(2) (Rev. 2001) "[a]ny person may petition the circuit court for an order of exhumation. Upon a showing of sufficient cause, the court may order the body exhumed." Ross filed a petition to exhume the body and a hearing occurred on the matter on January 4, 2001. During the hearing Ross's counsel stated that an exhumation might be avoided if they were given the autopsy photos as well as the blood samples, urine samples, and the gunshot residue kit. The trial court did note an inconsistency in the autopsy report, but stated that the photographs would clear it up.
 ¶ 12. At the end of the hearing, Ross's counsel asked that the motion be held in abeyance until they were given a chance to examine the photographs and samples. Ross's counsel stated that after reviewing the evidence he might "want to renew the motion after that and then the Court consider it then. I may not." The trial court responded, "very well." However, we cannot find in the record where Ross renewed his petition before or during trial. Ross merely alludes to the fact that the petition for exhumation was denied. We fail to see how the trial court could be in error if Ross never renewed the petition to exhume Deidre's body. Even if Ross had renewed the motion rather than complaining about not being allowed to exhume the body, we still fail to see how the trial court erred in failing to grant the petition. The trial court obviously found that Ross's petition failed to sufficiently show cause. This issue is without merit.
 III. DID THE TRIAL COURT ERR IN ADMITTING EVIDENCE CONCERNING THE SCENE OF DEATH IN LIGHT OF CIRCUMSTANCES SUGGESTING TAMPERING WITH THE EVIDENCE?
 ¶ 13. In his third issue, Ross claims that the scene of death was tampered with and, thus, the photographs of the scene should not have been admitted into evidence. Ross also argues that all testimony relying on the photos of Deidre's left arm should have been excluded as well. The admissibility of photographs rests within the sound discretion of the trial judge and, absent an abuse of discretion, his decision will be upheld. Taylor v.State, 672 So.2d 1246, 1270 (Miss. 1996). When the State has produced evidence as to the chain of custody and improbability of tampering, the burden then shifts to the defendant to establish that it has been tampered with. Williams v. State,794 So.2d 181 (¶ 10) (Miss. 2001).
 ¶ 14. Ross is specifically complaining about the photographs of Deidre holding the gun in her left hand, which is lying on top of her body. After reviewing the photographs of the scene of death, the trial court noted that "I'm not seeing that this is a[sic] different — it looks like the same scene to me, but it's just taken — this one is taken at a different angle from this one." *Page 1186 
In the photograph taken from a few feet from the foot of the bed, the bedspread is bunched up obscuring Deidre's hand and the gun. Thus, it would appear that her whole body except for her head is under the covers. However, in looking at the photographs taken from different angles, it is apparent that the gun is in Deidre's hand on top of the bedspread.
 ¶ 15. Ross also argues that one of the police officers on the scene stated that Deidre's head was on the pillow and the rest of her was under the covers. In response, the trial court stated that he would not exclude the photographs based on that particular statement by the police officer. We cannot find that the trial court abused its discretion in allowing the photographs of the scene of death into evidence as Ross failed to adequately prove the scene had been tampered with.
 IV. DID THE TRIAL COURT ERR IN ALLOWING INTO EVIDENCE DEIDRE'S PRIOR INJURIES?
 ¶ 16. In his next issue, Ross argues that the trial court erred in allowing testimony about prior injuries to Deidre into evidence. Ross contends that this was an effort to show that he had beaten her on prior occasions and, thus, was likely to have caused the bruises on the night of her death. The trial court found that the bruises were relevant to support the State's contention that Ross and Deidre argued and fought right before Ross killed her.
 ¶ 17. During the testimony of Linda Baugh, the State attempted to question her as to bruises she had seen on Deidre. Ross objected stating that the evidence of bruising was not closely related in time to Deidre's death and the trial court sustained the objection. Later, during the testimony of Steve Oswalt, Deidre's boss, the trial court said it would allow evidence of prior bruises on Deidre if the State could connect it to some particular time. Oswalt testified that Deidre had worked for him for over three years and would periodically come show him bruises on her body. Oswalt never specifically stated that Deidre claimed Ross had inflicted these bruises on her.
 ¶ 18. However, we do note that when questioning his own witness, Don Steed, Ross's counsel, on redirect, asked Steed, "Have you ever known Mrs. Ross to have bruises prior to that day?" Steed replied, "Yes, sir." Ross's counsel then asked Steed again, "So you had seen bruises prior to this on her arms and legs; is that correct?" Steed again replied, "Yes, sir."
 ¶ 19. We cannot find that having two witnesses, out of over twenty who testified at trial, briefly mention that Deidre had bruises on her at various times prior to her death violates Mississippi Rule of Evidence 404(a)(1). Ross never objected to the substance of the testimony, only that the State needed to show a time frame in which the bruises occurred. The State did so and the trial court found the testimony to be relevant and allowed it into evidence. We cannot find that the trial court abused its discretion in allowing mention of prior bruises on Deidre's body.
 V. DID THE TRIAL COURT ERR IN ALLOWING TESTIMONY OF ROSS'S ALLEGED JEALOUS NATURE INTO EVIDENCE?
 ¶ 20. In his next issue, Ross alleges that the trial court erred in allowing testimony of his jealous nature into evidence. Steve Oswalt stated that he knew Ross was a jealous person. Ross objected stating no specific grounds and the trial court overruled his objection. Later, during the cross-examination of one of Ross's witnesses, the State asked Everett Williams, "And after she lost a lot of weight that John got very jealous of her; *Page 1187 
is that right?" Williams responded in the affirmative and also stated that Ross had confronted him about having an affair with Deidre. Ross's counsel never objected during this line of questioning. It is well established that the appellant must object with specificity in order to preserve an error for appeal.Renfrow v. State, 863 So.2d 1047 (¶ 38) (Miss.Ct.App. 2004);Oates v. State, 421 So.2d 1025, 1030 (Miss. 1982). This assignment of error is procedurally barred.
 ¶ 21. We do note that, during the trial, numerous witnesses testified that Ross was angry at Deidre during the party they attended the night of her death. There was testimony that Ross grabbed Deidre's arm, tried to remove her from the dance floor, and cursed at her. Another witness testified that, at the party, Ross threw a beer bottle at Deidre, but it missed her. Ross's counsel never objected to any of the testimony describing Ross as angry and mad at Deidre the night of her murder.
VI. DID THE STATE FAIL TO MEET ITS BURDEN OF PROOF?
 ¶ 22. In his last issue, Ross contends that the State failed to meet its burden of proof. Specifically, Ross argues that, because this was a circumstantial evidence case, the State's evidence must prove Ross's guilt beyond a reasonable doubt and exclude every other reasonable hypothesis. A circumstantial evidence case is one in which there is neither an eyewitness nor a confession to the crime. Mangum v. State, 762 So.2d 337, 344 (Miss. 2000). To sustain a conviction on circumstantial evidence, every other reasonable hypothesis of innocence must be excluded. "[D]irect evidence is unnecessary to support a conviction so long as sufficient circumstantial evidence exists to establish guilt beyond a reasonable doubt." Neal v. State, 805 So.2d 520, 526
(Miss. 2002) (quoting Underwood v. State, 708 So.2d 18, 35
(Miss. 1998)). "Circumstantial evidence need not exclude every `possible doubt,' but only every other `reasonable' hypothesis of innocence." Neal, 805 So.2d at 526 (quoting Tolbert v. State,407 So.2d 815, 820 (Miss. 1981)). "Each case must be determined from the circumstances shown in the testimony and the facts must consistently point to but one conclusion — guilt." Neal,805 So.2d at 526.
 ¶ 23. Ross mainly takes issue with Dr. Hayne's testimony, stating that it is insufficient to find that he shot Deidre. Instead, Ross claims that a reasonable hypothesis of his innocence is the possibility that Deidre shot herself. However, all of Dr. Hayne's testimony was based upon a reasonable medical certainty that Deidre could not have fired the shot that killed her. Dr. Hayne's testimony was based upon physical facts, the location of the entrance wound, the resting place of the bullet, and the distance from the head from which the gun was fired. Deidre had bruises on her face and defensive wounds on her arms. We find that the State met its burden of proof; thus, this issue is without merit.
 ¶ 24. THE JUDGMENT OF THE SUNFLOWER CIRCUIT COURT OFCONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THEMISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THISAPPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. THOMAS, J., NOT PARTICIPATING.
[1] We note that although Mrs. Ross is referred to as "Deidren" in the indictment, both the appellant and the appellee refer to her as "Deidre" in the briefs presented to this Court. *Page 1188