## MOSES ROWLAND *v.* STATE OF MISSISSIPPI.

CRIMINAL LAW. *Homicide. Provocation. Adultery of wife. Murder. Manslaughter.*

A husband is not guilty of murder, but of manslaughter only, who instantly shoots and kills his wife or her paramour on discovering them in the very act of adultery.

FROM the circuit court of Prentiss county.

HON. EUGENE O. SYKES, Judge.

Rowland, appellant, was indicted, tried, and convicted of murder, and appealed to the supreme court. The facts are fully stated in the opinion of the court.

*Johnston & Sharp,* for appellant.

This court has said, "If the defendant had caught the offender in the act of adultery with his wife, and had slain him on the spot, the crime would have been extenuated to manslaughter. Such provocation being in legal contemplation sufficient to produce that *brevis furor* which for the moment unsettles reason." *Reed* v. *State,* 62 Miss., 405.

Under this decision, if the defendant had killed John Thorne, whom he caught in the act of adultery with his wife, he would have been guilty of manslaughter only. The same rule will undoubtedly apply when the defendant killed his wife while attempting to kill her paramour. "Let the result of an action be what it may, we hold a man guilty simply on the ground of intention, or, on the same ground, we hold him innocent." 1 Bishop's Criminal Law, pp. 162, 163.

In many of the courts, the statement of the law in this connection is much stronger in defendant's favor than the Reed case even; for it is declared: "If a husband detects his wife in the act of sexual intercourse with another, or discovers them together in such position or under such circumstances as to in-

dicate with reasonable certainty to a rational mind that they are just then committing or were about to commit the adulterous act, and, enraged and humiliated by the wrong, kills in the first transport of passion, either the woman or her paramour, the homicide will be manslaughter only." 21 Am. & Eng. Enc. Law (2d ed.), 187, and cases cited in notes 9 and 10.

It would seem that under these decisions it is immaterial whether defendant killed his wife intentionally, or whether he killed her in attempting to kill John Thorne, or whether he actually caught them in the act of adultery; the question is, did the defendant in the first transport of passion, kill his wife upon detecting her in the act of sexual intercourse with John Thorne, or upon discovering them together in such position or under such circumstances as to indicate with reasonable certainty to a rational mind, that they were just then committing, or were about to commit, the adulterous act?

The evidence offered both by the state and defendant shows such a state of facts as to bring the case squarely under the rule laid down in these decisions.

*J. N. Flowers,* assistant attorney general, for appellee.

We call the attention of the court especially to the completeness and prominence of the instructions distinguishing manslaughter from murder. The jury could not possibly have been misled with these instructions before them. There is sufficient testimony to support the verdict of the jury and their verdict was brought in deliberately. The jury decided not only that accused is guilty of a crime, but they also decided the question whether the crime is murder or manslaughter. That issue was expressly presented and they decided that the accused committed murder.

Truly, J., delivered the opinion of the court.

Appellant was indicted for the murder of his wife, Becky Rowland, sentenced to imprisonment for life, and appeals. His

story is as follows: His wife had been for about two months prior to the homicide living with Lou Pate, at whose house the killing occurred. Appellant and his wife were on good terms, and he was in the habit of visiting her and staying one night with her each week, or every two weeks. Lou Pate's house consisted of two rooms. In the front room were two beds—one occupied by Lou and her husband, and the other usually occupied by Becky Rowland. In the back room there was one bed. On the night of the killing, appellant reached Pate's house about ten o'clock, hitched his horse, and noticed John Thorne's also hitched to the fence. Coming up to the house, he heard a man and a woman talking in the back room, in which there was no light. Listening, he discovered that John Thorne and Becky Rowland (appellant's wife) were in the room, and heard Thorne say, "Make haste." This aroused his suspicions, and he attempted to open the back door of the room; but it being latched he went to the front door, pushed it open, and went into the front room, where, by the dim light of a lamp burning at the foot of their bed, he saw Lou Pate and her husband in bed asleep. He spoke to them, and also called his wife's name. Getting no answer, he stepped through the partition door into the back room, and discovered his wife and Thorne in the very act of adultery. They sprang up as they caugh sight of him, and both rushed by him through the doorway into the front room, his wife blowing out the lamp as she passed the foot of the bed. Appellant fired at Thorne, and killed his wife. Lou Pate, the only eye witness introduced by the state, corroborated the story of appellant in its main features. She testified that Thorne came to the house about first dark, and, when she and her husband went to bed; Thorne and Becky were seated in the same room, talking; that she was awakened by hearing appellant speak, and saw him standing in her room; that he went to the door between the rooms, and then Becky ran out of the back room into the front room, and blew out the lamp just as appellant shot; that she did not see Thorne run out of the back room, and did not know how

or when he got out of the house, but that after the shooting his horse was still hitched to the fence. Becky was in her night-clothes when killed.

On this statement of case, the court instructed the jury on behalf of the state as follows: "The court instructs the jury that murder is the killing of a human being without authority of law, by any means or in any manner, when done with the deliberate design to effect the death of the person killed; and if the jury believe from the evidence in this case, beyond a reasonable doubt, that the defendant so killed the deceased, Becky Rowland, then the jury will find the defendant guilty as charged in the bill of indictment."

In *Reed* v. *State*, 62 Miss., 405, it is said: "If he (the defendant) had caught the offender in the act of adultery with his wife, and had slain him on the spot, the crime would have been extenuated to manslaughter; such provocation, in legal contemplation, being sufficient to produce that *brevis furor* which for the moment unsettles reason." And this was recognized as the rule at common law. 4 Bla. Com., 191. In *Mays* v. *State*, 88 Ga., 403, 14 S. E., 560—a case strikingly in point—quoting and approving the statement of the law by Gilpin, C. J., in *State* v. *Pratt*, 1 Houst. (Del.), 265, it is said: "In order to reduce the crime from murder to manslaughter it is necessary that it should be shown that the prisoner found the deceased in the very act of adultery with his wife. I do not mean to say that the prisoner must stand by and witness the actual copulative conjunction between the guilty parties. If the prisoner saw the deceased in bed with his wife, or saw him leaving the bed of the wife, or if he found them together in such position as to indicate with reasonable certainty to a rational mind that they had just then committed the adulterous act, * * * it will be sufficient to satisfy the requirements of the law in this regard; and if, under such circumstances, he then and there struck the mortal blow, his offense would amount to manslaughter only." And in principle there can be no difference in the degree of the crime,

whether the betrayed husband slays the faithless wife or her guilty paramour. In either event the crime proven has uniformly been held to be, not murder, but manslaughter. 2 Bish., Cr. Law, sec. 708; McClain's Crim. Law, sec. 341; 21 Am. & Eng. Enc. Law (2d ed.), 187. Making an application for the foregoing principle of law to the case at bar, we find that the conviction for murder was not warranted by the facts, and cannot be sustained. In some jurisdictions, homicide under the circumstances disclosed by this record is held to be justifiable; and we have been unable to find any decision of a court of last resort, which, in absence of express statue, upheld a conviction for murder under similar facts. Accepting the story of the state's witness as absolutely true, deceased and Thorne were surprised by appellant under such conditions and amid such surroundings as to demonstrate with absolute certainty that they were then actually committing adultery. This fact alone, in legal contemplation, is adequate provocation to reduce the grade of the homicide, if then instantly committed, from murder to manslaughter. *Price* v. *State,* 51 Am. Rep., 323, and numerous citations.

From an extended examination of the authorities bearing on this question, we conclude that there was no testimony upon which to base the second instruction granted for the state, as hereinbefore quoted. There are no facts disclosed by this record to warrant the jury in finding that appellant acted from a "deliberate design to affect the death of the person killed." The law, from the earliest ages, recognizing and considering the passions and frailties of man, in its mercy, has said that deliberation cannot be predicated of the deeds of a man situated as was the appellant at the moment of the homicide.

*Reversed and remanded.*