DENHAM *v.* STATE.

Oct. 26, 1953

No. 38824 40 Adv. S. 3 67 So. 2d 445

424

*E. B. Todd, Barnett, Jones & Montgomery,* Jackson, for appellant.

*John E. Stone,* Assistant Attorney General, Jackson, for appellee.

426

LEE, J.

Sylvester David Denham was indicted in the First Judicial District of Hinds County for the murder of Mrs. Sylvester W. Denham, his wife. The jury found him guilty of manslaughter, with a recommendation of mercy, and the court sentenced him to serve a term of seven years in the state penitentiary. From the judgment entered thereon, he appealed.

On the evening of April 24, 1952, shortly after nine o'clock, a couple registered into Unit 2 of the Oakland Tourist Court in the City of Jackson as Mr. and Mrs. J. Turner. About fifteen minutes later, Miss Bessie Whitmore, the manager, heard a loud crash and several shots. Shortly thereafter, she saw the appellant coming from the north end of the court with a shotgun in his hand. He walked up to her and said, "Bessie, call the law." When she asked what had happened, he replied, "I just shot my wife." Within a matter of minutes police officers came and discovered the bodies of Mrs. Sylvester W. Denham and Wesley Kemp inside the tourist cabin. Pictures were taken of both the exterior and interior. The cabin consisted of a bedroom and adjacent bath. The bed was located about five feet from the door, and

on it lay Mrs. Denham, clad in a kimono, which was pulled under her arms, and a slip, which was also drawn above the waist. She also wore a gown. There were two shotgun wounds in her body. One was in the lower part of the abdomen and the other was in her left side. Shoeless, her feet rested on the floor. On the other side, and at the foot of the bed, lay the crouching body of Wesley Kemp, with shotgun wounds in the pit of the stomach and in the right shoulder. He was clad only in an undershirt, his shoes and socks were under the edge of the bed, and his clothes were hanging on a nearby chair. Dents, caused from buckshot, were observed on the wall over the head of the bed, and some of such shots were picked up from the floor.

The shotgun, taken from the appellant, still had one unfired shell in it. Seven other shells, all loaded with buckshot, were taken from his person. Four empty shells were picked up at the scene, together with a sledge hammer and pieces of a flashlight.

Appellant was taken into custody, and later that night, made a free and voluntary confession. The substance of the confession was that the appellant had suspected his wife of being unfaithful to him. He procured one G. E. Delbridge to rent a room at the Oakland Court in order to watch for his wife. Some time in the evening, Delbridge reported that he had been unable to detect anything. Thereafter both men, in a car, started to Delbridge's room at the court. Appellant secreted himself by lying down on the floor of the car. He carried a sledge hammer and a shotgun with him. In Delbridge's room, he heard the alleged Mr. and Mrs. J. Turner talking as they were renting their cabin, but he knew that they were his wife and her brother-in-law, Kemp. A few minutes later, with the sledge hammer and shotgun, to which was taped a flashlight, he went to the door of Unit 2, broke it open with the sledge hammer and threw the light directly on his wife and Kemp, who were in the bed, engaged in sexual intercourse. He told them to

"wait" or "hold it." One of them said, "Look out, there is Sylvester." Kemp jumped up and started toward his clothes. Thereupon appellant said, "And as he did, I shot him one time, then she started up off of the bed and started toward me and I shot her one time. Then as he turned over again I shot him again, and then I shot her again." However he qualified the above statement by saying, "I am not positive if I shot him, then her, or if I shot him two times, then her two times." The foregoing constituted the State's case in chief.

The defense produced a large number of witnesses who testified that appellant's general reputation for peace and violence, for honesty, integrity and fair dealings was good. His son, B. D. Denham; mother, Mrs. Martha Denham, and a maid, Louverta Fields, testified to certain facts which tended to establish the deceased's marital infidelity. The son and mother also testified that the appellant was greatly disturbed, and, in their opinion, he was insane at the time of the killing. On the stand, the appellant testified in great detail about his marital unhappiness, including telephone calls and conversations and the finding of notes; that he wished to obtain trustworthy evidence so that he could obtain a divorce, and to that end, he talked with the sheriff and other officers and employed G. E. Delbridge. He had not suspected any improper relations between his wife and Kemp until they visited in Kemp's home the day before. His testimony as to the facts and circumstances immediately before and at the time of the killing, while more elaborate, was in substantial agreement with what he said in his confession. When asked if he was insane when he called the police, his reply was, "I was just like that (shaking)." He admitted that he dialed "0" and called for an ambulance.

In rebuttal, the State introduced officers H. G. Harrel and L. C. Bennett, who went to the scene and who had the opportunity to observe the appellant for some time

thereafter; Mrs. Fannie Wooten, who had the opportunity to observe him on the day before when he and his wife were visiting in the Kemp home; and Mrs. Wesley Kemp, who had seen him in Jackson on the preceding Saturday. All of these witnesses testified that, in their opinion, the appellant was sane.

By proper instructions, the issue of insanity at the time of the killing was submitted to the jury, and by its verdict, the jury found that the appellant was sane. The warrant for this finding rests not upon the mere division in opinion alone. In addition the appellant told Miss Whitmore to "call the law" and "I just shot my wife." He himself dialed for an ambulance. These statements and act were susceptible of the conclusion that he believed that he had done something wrong.

Appellant's principal contention revolves around alleged errors of the lower court: (1) in indicting and trying him for murder; (2) in permitting the State to inquire about and introduce evidence as to other crimes; and (3) in denying his requested self-defense instructions.

In Reed v. State, 62 Miss. 405, it was recognized as the law that, █ if a man catches his wife in adultery with another man and then and there slays her paramour, the provocation is so great that it extenuates his crime from murder to manslaughter; but if he does not slay the adulterer on the spot, but afterward, when sufficient time has elapsed for passion to cool, the killing, instead of manslaughter, is murder. The above ruling was applied in Rowland v. State, 83 Miss. 483, 35 So. 826, and the offense was reduced to manslaughter when Rowland caught his wife in adultery with another man, and in firing at her paramour, killed his wife. To the same effect is Cockrell v. State, 175 Miss. 613, 168 So. 617, where Cockrell, following his wife, without the slightest suspicion of unfaithfulness on her part, immediately killed her paramour when he discovered them in adultery. The opinion cited Hughey v. State, 106 So. 361, and quoted

the following excerpt therefrom: ''The mere fact alone that the appellant saw the deceased and her husband engaged in such conduct would not reduce the crime to manslaughter unless it had the effect of arousing the angry passions of the mind to such an extent as to overthrow reason.'' The Court also went on to say in its opinion: ''We do not mean to hold that the mere fact that an offended spouse comes upon the other in the act of adultery, and kills one or both of them, would reduce the crime from murder to manslaughter in all cases, nor would it be a license to murder. The facts and circumstances of each case are to be considered.''

In the Rowland and Cockrell cases, supra, the infidelity of the spouses was not anticipated. The adulterous conduct was discovered suddenly and the killings occurred immediately. They were not premeditated, and, under the circumstances, were attributed to heat of passion.

But in the case here, the proof was ample to show premeditation, deliberation and lying in wait, with all of the elements of malice aforethought. So, if the evidence was sufficient to sustain a verdict for murder, it was not error either to charge the accused with murder or to submit that issue to the jury, even though the jury, trying the case, returned a verdict for manslaughter only. This Court has repeatedly held that a defendant, who has been convicted of manslaughter, may not complain at the giving of a murder instruction. Cockerham v. State, 202 Miss. 25, 30 So. 2d 417; Gregory v. State, 152 Miss. 133, 118 So. 906; Carter v. State, 99 Miss. 435, 54 So. 734. It has also been held that: ''an accused may not complain of the refusal of an instruction limiting the verdict to manslaughter when the jury have done that which such instruction would have required.'' Knight v. State, 215 Miss. 251, 60 So. 2d 638.

As to his contention (2), this has particular reference to questions by counsel for the State which charged or

implied that appellant, in some instances, had permitted cabins in his tourist courts to be used for assignation purposes.

Insanity at the time of the killing was interposed as a defense. Appellant's son and mother had already testified on that issue when the witness Louverta Fields admitted, on cross-examination and without objection, that sometimes cabins were rented twice at night. This inquiry was pressed on appellant's cross-examination; and in rebuttal, Mrs. Kemp was permitted to testify that appellant, in the past, had instructed her not to look at guests who were entering his tourist court because she might see someone from her home town.

In Smith v. State, 95 Miss. 786, 49 So. 945, on cross-examination Smith was asked and required to testify over his objection to his conduct in several fights which he had with various parties at various times, when there was no pretense that he was insane. Other witnesses also testified to that conduct. The action of the court in that particular was assigned as error. The Court said: "This evidence was relevant to the issue and perfectly competent. Where the defense is insanity, general or partial, the door is thrown wide open for the admission of evidence; every act of the party's life is relevant to the issue and admissible in evidence."

In Hinton v. State, 209 Miss. 608, 45 So. 2d 805, the defense was insanity, and the State, on cross-examination of the accused's witnesses, drew out the fact that Hinton had been engaged, before the homicide, in making whiskey. It was held that, owing to the lateness of the objection and the rule as laid down in Smith v. State, supra, the admission of that evidence did not constitute a sufficient ground for reversal of the case.

██ But for the defense of insanity the admission of the evidence here complained of would have been error. However, see Hill v. State, 64 Miss. 431, 1 So. 494; Carter v. State, supra; Beale v. State, 213 Miss. 476, 54 So. 2d

921, the effect of which holdings is that this Court will not reverse unless it is satisfied both that error has been committed and that it resulted in prejudice to the defendant.

As to appellant's contention (3), the question is whether or not the court erred in refusing to grant instructions on the theory of self-defense.

In his confession, appellant said that as Kemp jumped up and started toward his clothes, he shot him one time, and then as his wife started from the bed and toward him, he shot her one time. He then shot Kemp again and his wife again. This statement was qualified, after he had read it, by the words, "I am not positive if I shot him, then her, or if I shot him two times, and then her two times." When he was on the stand, on cross-examination, he was asked if he had not told the police that night, and had never told them to the contrary, "that she (his wife) started up off the bed at you and you shot her?" His answer was, "I can't remember anything that happened after the first shot." Later, he was asked if he recognized his wife before he shot. His answer was that he did "when the lights went on and as he (Kemp) rolled up and off of her." These questions and answers then followed: Q. "Your wife was not going for any pistol was she?" A. "No." Q. "Your wife never got off the bed, did she?" A. "No, I just know she did not." While the appellant testified that he believed that Kemp, in going toward his clothes, was trying to get a gun and that his shooting of Kemp was in self-defense, there was no evidence whatever that he had any fear or apprehension for his life or safety, so far as his wife was concerned. This Court, in Pitts v. State, 211 Miss. 268, 51 So. 2d 448, said: "In order to justify or excuse the taking of human life in self-defense, 'the danger or peril of loss of life or the infliction of serious bodily harm must be, or appear to be, impending and imminent . . . so urgent and pressing that it is nec-

sary for him to kill in order to save himself.' " 40 C. J. S., Homicide, Sec. 123, p. 1000.

 Since the evidence and the logical inferences therefrom afford no basis on which to predicate self-defense instructions so far as the killing of Mrs. Denham was concerned, the refusal of those instructions did not constitute error.

The statement of facts shows that the principle announced in Weathersby v. State, 165 Miss. 207, 147 So. 481, and Westbrook v. State, 202 Miss. 426, 32 So. 2d 251, and the cases which follow that rule has no application to effect the acquittal of the appellant. On the contrary, his own version was sufficient to establish his guilt at least of the offense of which he stands convicted.

 After due consideration of all alleged errors which were assigned and argued, we find nothing of sufficient gravity to warrant a reversal of this case. On the contrary, it appears that both court and jury, in the trial below, dealt both fairly and mercifully with the appellant.

Consequently this cause ought to be, and is, affirmed. Affirmed.

*McGehee, C. J.,* and *Roberds, Holmes* and *Ethridge, JJ.,* concur.