LEE, P.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. Carl Edward Rayford was found guilty of murder by a jury in the Harrison County Circuit Court. Rayford was sentenced to life in the custody of the Mississippi Department of Corrections. The trial court subsequently denied Rayford’s motion for a new trial. Rayford now appeals asserting that the evidence was insufficient to support the verdict, and the verdict is against the overwhelming weight of the evidence.
 

 FACTS
 

 ¶ 2. On the morning of May 26, 2002, Rodney Terrell was walking to his job at Gulf Concrete when he was spotted by a friend, David Carter. Carter offered Terrell a ride, and Terrell accepted. After only a few blocks, Carter dropped Terrell off at another location in Gulfport, Mississippi, so Terrell could ride the rest of the way to work with a co-worker. Moses Brent was taking his garbage to the street when he saw Terrell exit Carter’s car. Brent saw Terrell walk to an apartment door in the complex across the street. As Terrell stood in front of apartment number five, Brent saw a man exit the same apartment and shoot Terrell five times with a handgun. After Terrell fell to the ground, Brent saw the man, later identified as Rayford, stand over Terrell and shoot him
 
 *219
 
 again. Brent immediately called 911. Brent stayed on the phone with the dispatcher to report Rayford’s subsequent actions.
 

 ¶ 3. Brent stated that Rayford reloaded his handgun, entered his apartment for a moment, exited his apartment wearing another shirt, got an assault rifle and ammunition from his truck, loaded the items in a Ford Mustang, and then drove away. Brent testified that Rayford conducted himself calmly and did not appear to be in a hurry.
 

 ¶ 4. Officer Greg Goodman, with the Gulfport Police Department, was dispatched to the scene and spotted Rayford’s Mustang. Officer Goodman attempted to block Rayford’s car, but Rayford accelerated and drove around the police car. Ray-ford was apprehended shortly thereafter. Officer Goodman stated that Rayford acted calmly and complied with police orders. In searching Rayford’s car, the police found a loaded handgun, a loaded assault rifle, and a canvas bag full of ammunition.
 

 ¶ 5. Officer Craig Peterson interviewed Rayford at the police station. Rayford stated that his co-workers had picked on him, and he had planned to quit that morning.
 

 ¶ 6. Rayford’s boss at Gulf Concrete testified that he never received any reports of a conflict between Rayford and Terrell. One of Rayford’s co-workers testified that Rayford was quiet and did not interact often with the other employees. There was testimony that the other employees sometimes picked on Rayford. Rayford’s landlord testified that Rayford mentioned several times that he had problems with his co-workers, but Rayford never revealed anything specific. Rayford’s sister testified that Rayford had told her he was picked on by his co-workers and that he was going to quit.
 

 ¶ 7. During trial, Rayford raised the defense of insanity. Rayford had a history of mental illness, having been first diagnosed with chronic depression in 1994. On one occasion Rayford had been prescribed antidepressant medication, but it is unclear how often Rayford took his medication. Rayford previously had attempted suicide on several occassions. Two experts testified concerning Rayford’s mental illness: Dr. Anthony Stock testified on behalf of Rayford, and Dr. Henry Maggio testified for the State.
 

 DISCUSSION
 

 I. LEGAL SUFFICIENCY OF THE EVIDENCE
 

 ¶ 8. In his first issue on appeal, Rayford argues that the evidence was insufficient to support the guilty verdict. Specifically, Rayford contends that the State did not prove beyond a reasonable doubt that he was legally sane at the time he shot Terrell. Mississippi still follows the
 
 M’Naghten
 
 test for determining whether a person was sane at the time of the crime.
 
 Woodham v. State,
 
 800 So.2d 1148, 1158 (¶ 29) (Miss.2001). Under the
 
 M’Naghten
 
 test, the accused must be “laboring under such defect of reason from disease of the mind as (1) not to know the nature and quality of the act he was doing, or (2) if he did know it, that he did not know that what he was doing was wrong.”
 
 Roundtree v. State,
 
 568 So.2d 1173, 1181 (Miss.1990). The accused must not have known right from wrong at the time of the offense.
 
 Woodham,
 
 800 So.2d at 1158 (¶ 29). The question of “a defendant’s sanity is within the province of the jury, which may accept or reject expert and lay testimony.”
 
 Id.
 
 A defendant is presumed sane until a reasonable doubt of sanity is created.
 
 Roundtree,
 
 568 So.2d at 1181. Once a reasonable doubt of sanity is raised, the State bears the burden to prove the defen
 
 *220
 
 dant’s sanity beyond a reasonable doubt.
 
 Id.
 

 ¶ 9. Dr. Stock, a psychiatrist, testified on behalf of Rayford. Dr. Stock examined Rayford for approximately one hour one year after the crime. Dr. Stock testified that Rayford was responsive during the examination and gave logical answers in response to the questions. Dr. Stock testified that Rayford had suffered from depression throughout his life and had attempted suicide five times. Dr. Stock diagnosed Rayford with major depression with severe psychotic findings. Dr. Stock opined that at the time of the murder, Rayford suffered from a brief psychotic episode and was unable to understand the nature and quality of his acts or know the difference between right and wrong. Rayford told Dr. Stock that on the day of the murder, when Rayford saw Terrell, he had an emotional surge of anger and then saw blood. Rayford told Dr. Stock that he was “floating out of his body.” Dr. Stock testified that Rayford was of “unsound mind at the time [of the murder] based upon the way [Rayford] reported the events of the day.”
 

 ¶ 10. Dr. Stock admitted that he had not been provided with the police reports and was unaware that there was an eyewitness to Rayford’s actions. Dr. Stock admitted that Rayford’s actions after the shooting could be perceived as purposeful actions, such that Rayford knew what he had done was wrong. In Dr. Stock’s report, he opined that Rayford “may” have been experiencing a “micro-psychotic event.” Dr. Stock noted that his diagnosis should be “substantiated through an extensive and full forensic evaluation.”
 

 ¶ 11. Dr. Maggio, a psychiatrist, testified for the State. Dr. Maggio also examined Rayford more than a year after the murder. Dr. Maggio reviewed Rayford’s medical records as well as court documents related to the case. Dr. Maggio opined that Rayford’s actions after the shooting were not the result of impulse. Dr. Maggio admitted that Rayford suffered from major depressive disorder, but he determined that Rayford knew the difference between right and wrong. Dr. Maggio noted that there was nothing in Rayford’s medical history to suggest prior psychotic episodes.
 

 ¶ 12. Both Dr. Stock and Dr. Maggio noted that Rayford complained in the past of having hallucinations. However, it is not evident that Rayford was having hallucinations on the day of Terrell’s murder.
 

 ¶ 13. We will not reverse a jury’s finding that a defendant was legally sane at the time of the crime if there is substantial evidence to support such a finding.
 
 Woodham,
 
 800 So.2d at, 1159 (¶ 31). In addition to Dr. Maggio’s testimony, there was evidence that: Rayford was upset with his co-workers; Rayford had trouble sleeping prior to the murder because of his relationship with his co-workers; and Ray-ford acted purposefully immediately after shooting Terrell. The jury did not find that the evidence supported a finding of insanity. Finding substantial evidence to support the jury’s verdict, we find this issue is without merit.
 

 II. OVERWHELMING WEIGHT OF THE EVIDENCE
 

 ¶ 14. Rayford also argues that the overwhelming weight of the evidence did not support a guilty verdict. This Court will “only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush v. State,
 
 895 So.2d 836, 844 (¶ 18) (Miss.2005). Here, the evidence presented by the State proved Rayford was legally sane at the time of the crime beyond a reasonable doubt. We cannot find that
 
 *221
 
 allowing the guilty verdict to stand would sanction an unconscionable injustice. This issue is without merit.
 

 ¶ 15. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.