MAXWELL, J.,
for the Court:
¶ 1. William Hogan fatally shot his wife in the face. A DeSoto County jury convicted him of murder. Though he admitted killing his wife, Hogan argues the circuit judge erred in denying him a directed verdict or new trial because: (1) he was temporarily insane during the shooting; and (2) at most, he committed manslaughter in the heat of passion, not deliberate-design murder. Finding substantial evidence supports the jury’s decision that Hogan was sane when he deliberately killed his wife, we affirm.
*38 FACTS
. ¶ 2. Two decades before shooting his wife, the teenaged Hogan discovered a live hand grenade. Wanting to impress his friends, he showed them the grenade, pulled the pin, and seriously injured himself. Shrapnel in his body over time destroyed his liver, requiring a transplant. The transplant process was emotionally difficult for Hogan, and he suffered anxiety and depression, leading to temporary hospitalization. But after his release from the hospital, Hogan did not continue any medication or see a therapist.
¶ 3. A year later, he met and began dating Wendy Threatt. Although Wendy had been unfaithful during the time they dated, Hogan decided to marry Wendy. He threatened to kill her if she ever cheated on him again.
¶ 4. A year into their marriage, Wendy went out on a Saturday night without Hogan. She did not return until Sunday afternoon. Hogan worried Wendy had cheated on him again. He spent the next several days obsessing over where Wendy had been. On Wednesday, while Hogan was at work, he and Wendy had a heated phone conversation. Afterwards, Hogan told his co-worker he was going to jail that night because he was going to shoot his wife.
¶ 5. That evening Hogan and Wendy were in their bedroom. They began talking about Saturday night. Wendy confessed she had gone to a bar and flirted with other men, buying them drinks and charming one man into letting her wear his cowboy hat. Upon hearing this, Hogan testified he “saw red.” He got the loaded pistol he kept in the nightstand and shot Wendy in the face multiple times. Because Wendy’s children were present in the house, Hogan unloaded the pistol before returning it to the nightstand. He then left the bedroom, closed the door, and told the children not to enter. He went outside and called 911, telling the operator that he had just shot his wife.
¶ 6. While never denying he fatally shot Wendy, Hogan pled not guilty to murder. At trial, he called psychiatrist Dr. Wood Hiatt, who opined Hogan was temporarily insane at the time of the shooting. The State called its own expert, Dr. Criss Lott, who testified Hogan knew the difference between right and wrong when he killed Wendy. The State also called Hogan’s coworker, who testified that hours before the shooting Hogan said he was going to shoot his wife.
¶ 7. The circuit court instructed the jury on both deliberate-design murder and the lesser-included offense of manslaughter. The jury found Hogan guilty of murder.
DISCUSSION
¶ 8. “The killing of a human being •without the authority of law by any means or in any manner shall be murder ... when done with deliberate design to effect the death of the person killed, or of any human being.” Miss.Code Ann. § 97-3-19(l)(a) (Rev.2006). To prove murder, the State had to prove beyond a reasonable doubt: (1) Hogan killed Wendy, (2) without authority of law, and (3) with deliberate design to effect her death. Brown v. State, 965 So.2d 1023, 1030 (¶27) (Miss. 2007) (citing Dilworth v. State, 909 So.2d 731, 736 (¶ 18) (Miss.2005)). On appeal, Hogan claims the State’s evidence was insufficient and overwhelmingly against the jury’s guilty verdict. We disagree.
I. Sufficiency of the Evidence
¶ 9. Hogan first argues the trial court should have granted him a directed verdict because the State failed to prove he deliberately designed for Wendy to die. Hogan frames his argument as the State’s *39 failure to prove a necessary element. But he really revives his insanity defense — that he was incapable of forming a deliberate design to cause Wendy’s death because he was temporarily insane when he shot her.
¶ 10. Hogan’s sanity was an issue for the jury. Roundtree v. State, 568 So.2d 1173, 1181 (Miss.1990). To determine insanity, Mississippi follows the M’Naghten Rule,[1] which essentially asks whether the defendant was unable to distinguish right from wrong at the time of the act. Woodham v. State, 800 So.2d 1148, 1158 (¶ 29) (Miss.2001) (citing Roundtree, 568 So.2d at 1181; Russell v. State, 729 So.2d 781, 784 (Miss.1997)). “In making its determination, the jury may accept or reject expert and lay testimony.” Id. We will not disturb a jury’s finding of sanity when it is supported by substantial evidence. Id. at 1159 (¶ 31) (affirming determination by jury, when presented with competing expert testimonies, that the defendant was sane); Rayford v. State, 47 So.3d 217, 220 (¶ 13) (Miss.Ct.App.2010) (affirming jury’s determination of sanity because it was supported by State’s expert).
¶ 11. Hogan argues Dr. Hiatt’s testimony established Hogan did not know his actions were wrong, due to his untreated depression and anxiety, which were exacerbated by his increased suspicion of Wendy’s infidelity. But the jury was not bound by Dr. Hiatt’s testimony. See Woodham, 800 So.2d at 1159 (¶ 31) (affirming the jury’s rejection of the expert opinion that the defendant was insane); Ray-ford, 47 So.3d at 220 (¶ 13) (same). The jury rejected his insanity defense and determined Hogan was sane. This determination was supported by both Dr. Lott’s expert testimony that Hogan could distinguish right from wrong and Hogan’s coworker’s testimony that Hogan stated he would have to go to jail for shooting his wife. Thus, we do not disturb the jury’s finding that Hogan was sane under M’Naghten.
¶ 12. Further, we find the State presented sufficient evidence of the essential element of deliberate design. See Brown, 965 So.2d at 1030 (¶ 26) (reviewing for sufficiency of the evidence by asking whether “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt”). “Deliberate design” is synonymous with “malice aforethought.” Jones v. State, 710 So.2d 870, 877 (¶ 30) (Miss.1998) (citing Tran v. State, 681 So.2d 514, 517 (Miss.1996)). “Deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent.” Brown, 965 So.2d at 1030 (¶ 28). “[D]eliberate-design connotes an intent to kill and may be inferred through the intentional use of any instrument which, based on its manner of use, is calculated to produce death or serious bodily injury.” Id.; see Hawthorne v. State, 835 So.2d 14, 22-23 (¶¶ 38-41) (Miss.2003) (inferring deliberate design from the use of deadly weapon).
¶ 13. Hogan, who was very experienced with guns, picked up a pistol he knew was loaded. He aimed it at Wendy’s head and fired multiple times, hitting his intended mark. Having rejected the notion that Hogan was insane, the jury had sufficient evidence to find beyond a reasonable doubt that Hogan intended to kill Wendy. We find there was sufficient evidence of deliberate design.
*40 II. Weight of the Evidence
¶ 14. Hogan next argues the circuit court should have granted his motion for a new trial because the overwhelming weight of the evidence is against the jury’s verdict of deliberate-design murder.
¶ 15. “A motion for new trial challenges the weight of the evidence.” Smith v. State, 925 So.2d 825, 832 (¶ 16) (Miss.2006). When considering the weight of the evidence, “we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). We review the weight of the evidence in the light most favorable to the verdict. Id.
¶ 16. Hogan asserts the overwhelming weight of the evidence supports, at most, a finding of manslaughter. “The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.” Miss.Code Ann. § 97-3-35 (Rev.2006). “An unjustified and unexcused taking of life is presumed to be murder unless there is evidence upon which a jury can rationally justify mitigation down to manslaughter.” Neal v. State, 805 So.2d 520, 525 (¶ 16) (Miss.2002) (emphasis added). “An example of mitigation occurs where there is a killing committed in a heat of passion arising out of a legally sufficient provocation.” Id. (citing Nicolaou v. State, 534 So.2d 168, 171-72 (Miss.1988)).
¶ 17. “Heat of passion” refers to a “ ‘state of violent and uncontrollable rage engendered by a blow or certain other provocation given,’ but the passion must be the result of ‘immediate and reasonable provocation’ arising from words or acts of the victim.” Turner v. State, 773 So.2d 952, 953 (¶ 5) (Miss.Ct.App.2000) (quoting Mullins v. State, 493 So.2d 971, 974 (Miss.1986)). The Mississippi Supreme Court has found catching a spouse in the act of adultery, without any prior suspicion of unfaithfulness, and slaying the adulterer or paramour “on the spot” as sufficient provocation for heat-of-passion manslaughter. Denham v. State, 218 Miss. 423, 429-30, 67 So.2d 445, 447-48 (1953) (citing Cockrell v. State, 175 Miss. 613, 619-22, 168 So. 617, 619-20 (1936); Rowland v. State, 83 Miss. 483, 486-87, 35 So. 826, 827 (1904); Reed v. State, 62 Miss. 405, 410 (1884)). But it cautioned that it “[did] not mean to hold the mere fact that an offended spouse comes upon the other in the act of adultery, and kills one or both of them, would reduce the crime from murder to manslaughter in all cases, nor would it be a license to murder. The facts and circumstances of each case are to be considered.” Id. at 430, 67 So.2d at 448 (quoting Cockrell, 175 Miss. at 622, 168 So. at 620).
¶ 18. The jury received instructions on both murder and manslaughter. It considered the facts and circumstances surrounding Hogan shooting Wendy. And it decided beyond a reasonable doubt Hogan committed murder.
¶ 19. The vital distinction of heat-of-passion manslaughter versus murder is the absence of malice, or deliberate design. Compare Miss.Code Ann. § 97 — 3—19(l)(a) with Miss.Code Ann. § 97-3-35. See also Bennett v. State, 956 So.2d 964, 969 (¶ 19) (Miss.Ct.App.2006) (“Heat of passion manslaughter requires the absence of malice.”). Hogan argues the overwhelming weight of the evidence was against a deliberate plan to kill Wendy. According to Hogan, what began as a discussion of his wife’s whereabouts on Saturday night ended with his, without thought, grabbing a loaded pistol and shooting Wendy. Hogan *41 testified all he remembered is seeing the color red. Afterwards, realizing what he had done, he did not try to hide his actions but directly called the authorities.
¶ 20. Viewing the evidence in the light most favorable to the verdict reveals Hogan told Wendy he would respond to any future infidelity by killing her. See Clemons v. State, 952 So.2d 314, 319 (¶15) (Miss.Ct.App.2007) (overruled on other grounds) (affirming denial of manslaughter instruction where evidence showed that defendant, though testifying he was in a rage when he killed his father, had previously considered killing him). Hogan spent three days stewing about where Wendy had been and what she had done on Saturday night, concerned that she had cheated on him again. See Denham, 218 Miss. at 430, 67 So.2d at 448 (noting that in cases cited where the cuckold husband committed manslaughter, versus murder, his wife’s infidelity had not been anticipated before sudden discovery). And Hogan told his co-worker he intended to shoot Wendy. While Wendy’s disclosure about her actions on Saturday night might have triggered Hogan, causing him to “see the color red,” there is evidence Hogan acted according to an already designed plan to kill Wendy once so triggered. That Hogan was resigned to the consequences of his plan — going to jail — and directly called the authorities after he killed her does not overwhelmingly weigh against a finding of deliberate design.
¶ 21. Finding no unconscionable injustice in allowing the jury’s verdict of guilty of murder and not manslaughter to stand, we affirm the judgment against Hogan.
¶ 22. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND RUSSELL, JJ., CONCUR.

. See Edwards v. State, 441 So.2d 84, 86 (Miss.1983) (quoting M’Naghten’s Case, 10 Clark & F. 200, 210, 8 Eng. Rep. 718, 722 (1843), as reprinted by R. Perkins, Criminal Law 859 (2d ed. 1969)).