# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00431-COA

TAMIRA PEOPLES A/K/A TAMIRA YVONNE          APPELLANT
PEOPLES A/K/A TAMIRA SULLIVAN

v.

STATE OF MISSISSIPPI          APPELLE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/27/2017 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: BENJAMIN ALLEN SUBER |
| | GEORGE T. HOLMES |
| | MOLLIE M. MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/18/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., WESTBROOKS AND TINDELL, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1. Tamira Yvonne Peoples was indicted by the Grand Jury of Forrest County for murder in violation of Mississippi Code Annotated section 97-3-19 (Rev. 2014) and aggravated assault in violation of Mississippi Code Annotated section 97-3-7 (Rev. 2014). Following a jury trial, Peoples was convicted on both counts and sentenced to life imprisonment for murder and twenty years for aggravated assault, with the sentences to run consecutively. Peoples filed a motion for a judgment notwithstanding the verdict (JNOV), or in the

alternative, for a new trial, which the trial court denied. Peoples appeals and asserts that the evidence was insufficient to support her murder conviction, the verdict was against the overwhelming weight of the evidence, the trial court erred in not granting a mistrial, and the State failed to preserve evidence. After review of the record, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     At trial, testimony showed that Rotanda Gholar and her daughter, Samina, lived next door to Peoples in an apartment complex in Forrest County, Mississippi. Rotanda and Samina were involved in an ongoing conflict with Peoples. Rotanda stated that she contacted "code enforcement" on Peoples because Peoples's inoperable car was taking up a parking spot. Rotanda also complained about Peoples's loud music and hammering, testifying that she requested to change apartments but was denied. Robert Sybert, an officer with the Hattiesburg Police Department (HPD), testified that Rotanda filed charges against Peoples for allegedly keying her car in their apartment complex.

¶3.     In November 2012, a person using an unknown number repeatedly called only to hang up when Rotanda answered. Peoples testified she repeatedly called Rotanda and Samina because she was upset at their poor treatment of her and her son. Peoples stated that she received a text message stating that she would contact the police if the calls did not stop. Later that day, Rotanda and Samina were leaving to go look at another apartment in a different apartment complex when Peoples shot Rotanda as she was walking out of her front door. Rotanda was able to run to safety down the street from her apartment. Peoples stated

2

that she shot Samina as she was running up the stairs because she believed Samina had a weapon. But, evidence later showed that Samina had been shot in the head. Moreover, no weapon was ever retrieved from their apartment.

¶4.     Kendall Walker, a neighbor in the same apartment complex, testified that he heard gunshots and walked outside to investigate the noise. Walker stated that he saw Peoples holding a gun and her son walking out of Rotanda's apartment. Walker also stated that he followed the blood trail and encountered Rotanda. Rotanda then asked Walker to go to her apartment and check on Samina. When he arrived at Rotanda's apartment, Walker testified that Samina appeared to be dead. Walker also saw Peoples flee in Rotanda's car and wave the gun in the air. Peoples later drove the car to Ohio and was apprehended after an alert was issued for the whereabouts of Rotanda's car. Deputy Jeff Smith, a deputy with the Lorain, Ohio Police Department, testified that he discovered Rotanda's car abandoned in a Wal-Mart parking lot.

¶5.     At trial, Peoples testified that someone was coming into her apartment at night, raping her and beating up her three-year old son, but she did not provide any proof to substantiate her claims.[1] Milan Hoze, the former director of the Hattiesburg Housing Authority, testified that Peoples had lived in another apartment complex and made similar accusations. Members

_____

[1] At trial, Rotanda alleged that Peoples damaged her car using a key. Peoples testified that Rotanda and Samina called her son names and abused him. Peoples stated that she and Rotanda also had issues because they were involved with the same man. Peoples further testified that she and Rotanda had a conflict because she accused Rotanda's cousin of assaulting and harassing her and that Samina called her son a derogatory name.

3

of the Hattiesburg Police Department confirmed that Peoples had filed police reports with similar accusations.

¶6.     Peoples was convicted of aggravated assault and murder and was sentenced to life in prison for murder and twenty years for aggravated assault. Peoples's JNOV motion, or motion for new trial, was denied by the circuit court and she timely appeals.

## DISCUSSION

### I.     Whether there was sufficient evidence to support Peoples's guilty verdict.

#### A.     Murder Conviction

¶7.     Peoples challenged the sufficiency of the evidence in her motion for a directed verdict at the end of the State's case and later in her post-trial JNOV motion. "On review of the sufficiency of the evidence, this Court considers the trial court's ruling at the last time the sufficiency of the evidence was challenged." *Warren v. State*, 187 So. 3d 616, 627 (¶29) (Miss. 2016). Further, "[i]n reviewing the denial of a motion for JNOV, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at (¶30) (internal quotation mark omitted). Accordingly, we review the trial court's denial of Peoples's JNOV motion.

¶8.     Peoples argues that the evidence is insufficient to support her murder conviction because the State failed to present evidence of the necessary element of "malice aforethought" beyond a reasonable doubt.

4

¶9.     Under Mississippi Code Annotated section 97-3-19(1)(a), "[t]he killing of a human being without the authority of law by any means or in any manner shall be murder . . . [w]hen done with deliberate design to effect the death of the person killed, or of any human being, shall be first-degree murder." Further, this Court has held:

> Deliberate design is synonymous with malice aforethought. Deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent. Deliberate-design connotes an intent to kill and may be inferred through the intentional use of any instrument which, based on its manner of use, is calculated to produce death or serious bodily injury." *Id.*; *see Hawthorne v. State*, 835 So. 2d 14, 22-23 (¶¶38-41) (Miss. 2003) (inferring deliberate design from the use of deadly weapon).

*Hogan v. State*, 89 So. 3d 36, 39 (¶12) (Miss. Ct. App. 2011) (citations and internal quotation marks omitted).

¶10.    Rotanda testified that she and Samina received numerous phone calls the day of the shooting; however, the caller would hang up when they answered. Rotanda stated that Samina informed the caller that she would call the police if the harassment did not stop. Peoples, however, testified that she called Rotanda and Samina several times that morning because she was mad about the alleged harassment she had endured. The jury heard testimony that Peoples shot Samina with a gun that she purchased a few months earlier. Walker, the neighbor, testified that moments after he heard gun shots, he saw Peoples walk out of Rotanda's apartment. He went to help Rotanda and, shortly after, he discovered Samina had been shot inside the apartment. Peoples testified that shortly after the shooting, she grabbed Rotanda's keys, whatever was at the front door, her son, and drove to Ohio in

5

Rotanda's car. Lastly, Peoples stated that she shot both Rotanda and Samina because Rotanda was going to sign a warrant against her, and she was in fear that her son would be taken and abused.

¶11. Furthermore, Dr. Erin Barnhart, former Chief Medical Examiner with the State of Mississippi Crime Lab and Medical Examiner's Office, testified that Samina died of a fatal gunshot wound to the head and that the manner of death was homicide. We find that the evidence was sufficient to enable a reasonable jury to convict Peoples of murder beyond a reasonable doubt. Accordingly, this issue is without merit.

### B. *Aggravated Assault Conviction*

¶12. Although it does not appear that Peoples challenges her aggravated assault conviction in her brief before this Court, we will briefly discuss the sufficiency of the evidence for the conviction.

¶13. Under Mississippi Code Annotated section 97-3-7(2)(a)(ii), "a person is guilty of aggravated assault if he . . . attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm."

¶14. The State presented evidence that Peoples intended to cause bodily harm to Rotanda when she shot at her multiple times while she exited her apartment. Jessica Dykes, a paramedic at the scene, testified that Rotanda was shot in the right shoulder, hand, and that the bullet grazed Rotanda's right side. Peoples stated that she believed that Rotanda was

upset with her and harassing her. Therefore, applying the same standard of review, we find that the evidence was sufficient to enable a reasonable jury to find Peoples guilty of aggravated assault.

**II.      Whether the jury verdict was against the overwhelming weight of the evidence.**

¶15.    Peoples also attacked the weight of the evidence by filing a motion for a new trial, which the trial court denied. "A motion for a new trial is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Warren*, 187 So. 3d at 628 (¶32). "The [reviewing] court must weigh the evidence in the light most favorable to the verdict." *Id*.

¶16.    Without reiterating the facts, the evidence presented at Peoples's trial was in favor of the verdict. The State presented evidence that showed that Peoples deliberately shot Samina to cause her death, and deliberately shot Rotanda to cause bodily harm and injury. Therefore, we find that the verdict was not against the overwhelming weight of the evidence for both convictions.

**III.      Whether the trial court erred in not granting Peoples's motion for a mistrial.**

¶17.    Peoples maintains that the circuit court erred in failing to declare a mistrial during Rotanda's outburst during direct examination. At trial, Rotanda was shown a picture of Samina and exclaimed, "That's my baby. That's my baby." The circuit court ordered

7

Rotanda to be placed in a witness room away from the jury. The court then dismissed the jury for lunch and entertained Peoples's motion for a mistrial based on Rotanda's outburst and the photo, which the defense argued was prejudicial.

¶18. "Whether to grant a motion for mistrial is within the sound discretion of the trial court." *Pilcher v. State*, 57 So. 3d 8, 10 (¶6) (Miss. Ct. App. 2010). "The standard of review for denial of a motion for mistrial is abuse of discretion." *Id*.

¶19. The Mississippi Supreme Court affirmed the denial of a mistrial based on an outburst in *Bell v. State*, 631 So. 2d 817 (Miss. 1994). Bell was on trial for murder and the victim's mother exclaimed "he cold-blooded killed my child." *Id*. at 819. The trial court sent the jury out and removed the victim's mother from the courtroom, and the Supreme Court found that "[a]ny harm flowing from the woman's outburst was removed by the trial judge's proficient handling of the matter." *Id*. at 820.

¶20. Peoples maintains that her case is similar to the facts in *Fuselier v. State*, 468 So. 2d 45 (Miss. 1985). In *Fuselier*, the victim's daughter sat at the counsel's table and exhibited emotion after having testified. *Id*. at 53. The Supreme Court held that "[the daughter's] presence at counsel table and open display of emotion presented the jury with the image of a prosecution acting on behalf of the [victim]" and that "it constituted an inflammatory and prejudicial element." *Id*. Furthermore, the trial court in *Fuselier* took no curative action after the outburst occurred.

¶21. Peoples also references the facts in *Craft v. State*, 970 So. 2d 178 (Miss. Ct. App.

8

2007). In *Craft*, "[a]n emotional outburst occurred during the playing of [a] 911 tape." *Id*. at 184 (¶22). After a brief recess, "no special instructions were requested or given to the jury [regarding the outburst]." *Id*. at (¶23). This Court found no error and held that "[t]he trial court was in the better position to assess the impact of the moaning and found a recess was all that was warranted." *Id*. at 186 (¶30).

¶22. Here, the trial court removed the jury from the courtroom, took a recess, and allowed Rotanda to compose herself after the remarks were made. Furthermore, the trial court did not allow the admission of the photo into evidence and marked the photo for identification purposes only. Therefore, we find that any harm flowing from Rotanda's outburst was removed by the trial court's proficient handling of the matter.

¶23. Accordingly, we find no abuse of the discretion and find that this issue is meritless.

**IV. Whether the State failed to preserve evidence.**

¶24. Peoples maintains that her due-process rights were violated and that she is entitled to a new trial because the State allegedly lost or destroyed bags of evidence recovered from the home where she was arrested.

¶25. At trial, Deputy Smith testified that he seized "several bags–three bags, I believe." The State responded by saying that the police report stated that only one bag and its contents were placed into evidence. Where a defendant claims that his or her due-process rights have been violated because the State lost or destroyed evidence, this Court employs the following three-part test:

(1) the evidence in question must possess an exculpatory value that was apparent before the evidence was destroyed; (2) the evidence must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means; and (3) the prosecution's destruction of the evidence must have been in bad faith.

*Tillis v. State*, 176 So. 3d 37, 52 (¶46) (Miss. Ct. App. 2014).

¶26. As to the first prong of the test, Deputy Smith testified that he believed there were three bags; but the State only submitted one bag, and its contents were placed into evidence. As a result, the State found that Deputy Smith misspoke. Moreover, the State acknowledged that at the time in which the police report was written, Deputy Smith stated that only one bag and its contents were seized as evidence. As a result, the evidence does not satisfy the first prong of the test since the State never possessed evidence with an apparent exculpatory value that it failed to preserve. Moreover, Peoples fails to support her assertion that the State acted in bad faith, and the record reflects no evidence that the State acted fraudulently.

¶27. Furthermore, the record supports that Peoples did not file a motion to compel discovery. As a result, we find that Peoples fails to meet the burden set forth in the aforementioned test to show that the State violated her due-process rights by losing or destroying evidence with exculpatory value. Accordingly, we find this issue meritless.

## CONCLUSION

¶28. After review of the record, we find no error in the denial of Peoples's JNOV motion, or in the alternative, for a new trial.

¶29. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND TINDELL, JJ., CONCUR.**